834 F.2d 869
 10 Fed.R.Serv.3d 60
 M.E.N. CO., a joint venture, Daniel P. Svilar, Nick Bebout,
Eli Bebout, John L. Larsen, and Margaret Leann
Larsen as Executrix of the Estate of G.
Lloyd Larsen, Plaintiffs-Appellees,
v.
CONTROL FLUIDICS, INC., International Water Savings Systems,
Inc., Walter O. Heinze, John White, and Water
Savings Devices Limited Partnership,
Defendants-Appellants.
 No. 85-2857.
 United States Court of Appeals,
Tenth Circuit.
 Dec. 3, 1987.
 
 Patrick Dixon of Murane & Bostwick, Casper, Wyo., for defendants-appellants.
 Michael D. Zwickl of Beech Street Law Offices, Casper, Wyo., for plaintiffs-appellees.
 Before SEYMOUR and ANDERSON, Circuit Judges, and BROWN,* District Judge.
 SEYMOUR, Circuit Judge.
 
 
 1
 The District Court for the District of Wyoming entered a default judgment against defendants after they and their attorneys failed to provide discovery or appear for noticed depositions, and then failed to obey a court order to appear for depositions, file a pretrial memorandum, and pay sanctions to plaintiffs. Defendants moved to vacate the default judgment primarily on the ground that defendants' attorneys, rather than defendants personally, had been at fault. The court denied the motion. Defendants appeal the default judgment, the denial of the motion to vacate, and the denial of an earlier motion to dismiss the action for failure to state a claim. Because the court's sanction was directed to defendants rather than their attorneys, we reverse the default judgment and remand for findings on whether defendants' conduct meets the appropriate standard.
 
 I.
 
 2
 Defendants are based in New York City, with the exception of defendant Heinze who has retired to Arizona. When plaintiffs brought suit in Wyoming in September 1984, defendants' New York counsel, Terri Feinstein, hired Robert J. O'Neil as Wyoming counsel. The extent of communication, or the lack thereof, between Feinstein, O'Neil, and their clients is central to our disposition of this case.
 
 
 3
 In January 1985, a pretrial conference took place and a schedule was established. The cutoff for discovery was set for May 10, the final pretrial for June 24, and the trial for July 29. The court subsequently extended the discovery cutoff four times, primarily because defendants failed to respond to plaintiffs' discovery requests or to attend depositions.
 
 
 4
 In April 1985, the court denied defendants' motion to dismiss. Plaintiffs then attempted to depose defendant White and the president of defendant Control Fluidics, Inc., Biller, in New York. O'Neil arranged for the deposition to be rescheduled because he had not yet submitted any written discovery to plaintiffs. Feinstein then rejected the second date noticed by plaintiffs as inconvenient, but apparently made no attempt to suggest dates that were convenient. It is not clear from the record whether she consulted with her clients before rejecting the date plaintiffs set; she already had other commitments herself on that date. O'Neil told plaintiffs that the date was not convenient. Although plaintiffs' counsel denies that he cancelled the deposition, O'Neil assumed that he had. Plaintiffs traveled to New York for the scheduled depositions even though plaintiffs' counsel admits that he knew defendants would not appear. Defendants, not surprisingly, did not attend. Plaintiffs then moved to compel discovery and for sanctions. The hearing on this motion was set for June 24, the date of the final pretrial conference.
 
 
 5
 Meanwhile, O'Neil left for National Guard duty in Idaho for three weeks. During his absence, plaintiffs obtained the third discovery cutoff extension and noticed the deposition of defendant Heinze. The notice was sent directly to Heinze. He did not receive it until the morning of the deposition or shortly before,[1] and did not appear at the deposition, which was scheduled in a different city.
 
 
 6
 O'Neil returned on the 18th of June. According to local court rules, the pretrial memorandum was due on the 19th, five days before final pretrial conference. O'Neil and Feinstein apparently each thought the other would prepare the memorandum; neither did. Consequently, defendants did not file a pretrial memorandum.
 
 
 7
 Final pretrial was held June 24 as scheduled. The court ordered O'Neil to file the pretrial memorandum by the evening of that day and extended the discovery cutoff until June 28. On the issue of sanctions, the court ordered Biller, White, and Heinze to appear June 28 in Cheyenne to be deposed, to bring all documents with them, and to be ready to pay as sanctions to plaintiffs their costs in flying to New York. He warned that if defendants did not comply with this order, their case would be defaulted.
 
 
 8
 On June 25, O'Neil told Feinstein some part of the above; they disagree on the conversation's scope. Feinstein called Biller that day and informed him that he, White, and Heinze were ordered to be in Cheyenne on the 28th. Feinstein asserts that she was unaware of the danger of a default judgment until she called the courthouse during the late afternoon of the 27th. She immediately informed Biller of what she had learned. Biller did not reach White and Heinze until the morning of the 28th. They did not appear in Cheyenne, no documents were submitted, and no sanctions were paid. Defendants never filed a pretrial memorandum.
 
 
 9
 The court granted judgment against defendants on June 29. The court's order reads in relevant part as follows:
 
 
 10
 "The Court was advised in the late afternoon on Thursday, June 27, 1985, by Attorney Terri A. Feinstein, of New York City, by telephone, that she represented the defendants, that said individual defendants would be unable to appear for their depositions in Cheyenne on June 28, 1985, as ordered for various reasons, all of which the Court finds without legal justification based on the information presented before this Court. The Court finds that in fact said individual defendants failed to appear for their depositions as ordered by this Court and the U.S. Magistrate, and that they further failed to pay the sum of $1,739 as ordered. The Court further notes that as of June 28, 1985, the defendants still have not filed a pretrial memorandum designating witnesses and exhibits.
 
 
 11
 "Based on the foregoing ..., the Court finds the defendants and each of them to be in default and that judgment should accordingly be entered against them."
 
 
 12
 Default Judgment Order, rec., vol. I, doc. 71, at 3. Represented by new Wyoming counsel, defendants moved to vacate the judgment on the ground that their failure to respond to discovery and comply with the court's order was due to their counsels' errors rather than their own. The court denied the motion. In so doing, the court stated as follows:
 
 
 13
 "At the hearing defendants' counsel asserted that defendants were not personally at fault, but that local counsel had failed to inform them of the depositions and pretrial conference. The Court is unconvinced. The deposition of local counsel, Robert O'Neil, Esq., makes it clear that defendants' New York counsel, Terri Feinstein, Esq., was well-aware of the depositions at which defendants failed to appear. Mr. O'Neil also informed Ms. Feinstein about the date of the pretrial conference and sent her a copy of this Court's local rules which clearly state the necessity of filing a pretrial memorandum.... Moreover, the Magistrate and the Court informed Ms. Feinstein, by telephone, that if a pretrial memorandum was not filed, and if Mr. Biller and Mr. White did not appear in Cheyenne for the June 28 depositions, her case would be defaulted.
 
 
 14
 "....
 
 
 15
 "The Court is convinced that defendants' attorneys had notice of the depositions in question at which they failed to appear, and also of the necessity of filing a pretrial memorandum. If lack of communication between Mr. O'Neil and Ms. Feinstein is really to blame for defendants' total disregard for the Court's Orders, then perhaps they should seek recourse in a legal malpractice suit...."
 
 
 16
 Order Denying Motion to Vacate Default Judgment, rec., vol. I, doc. 92, at 2, 3. This was the district court's only discussion of the notice issue. At no point did the court make findings as to what defendants knew and when.
 
 II.
 
 17
 The Federal Rules of Civil Procedure authorize default judgments against parties who fail to comply with court orders or fail to attend depositions and serve answers to interrogatories. Fed.R.Civ.P. 37(b)(2), (d). The court may also impose sanctions on a party or party's attorney who fails to obey a scheduling or pretrial order. Fed.R.Civ.P. 16(f). Our review of such sanctions is governed by the abuse of discretion standard, National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976), in the totality of the circumstances, In re Sanction of Baker, 744 F.2d 1438, 1440 (10th Cir.1984) (en banc), cert. denied, 471 U.S. 1014, 105 S.Ct. 2016, 85 L.Ed.2d 299 (1985).
 
 
 18
 Because a default judgment is a harsh sanction, due process requires that "failure" is a sufficient ground only when it is the result of "wilfullness, bad faith, or [some] fault of petitioner" rather than inability to comply. National Hockey League, 427 U.S. at 640, 96 S.Ct. at 2779 (quoting Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers, 357 U.S. 197, 212, 78 S.Ct. 1087, 1095, 2 L.Ed.2d 1255 (1958)); see also In re Westinghouse Elec. Corp. Uranium Contracts Litig., 563 F.2d 992 (10th Cir.1977) (applying Societe Internationale 's good faith test). We have defined a willful failure as "any intentional failure as distinguished from involuntary noncompliance. No wrongful intent need be shown." In re Standard Metals Corp., 817 F.2d 625, 628-29 (10th Cir.1987) (quoting Patterson v. C.I.T. Corp., 352 F.2d 333, 336 (10th Cir.1965)).
 
 
 19
 Defendants do not claim that they were unable to comply with the court's order or to provide discovery. Indeed, they argue that they have always been able and willing to comply, but have never received proper notice. They lay the blame for this lack of communication on the shoulders of their attorneys.
 
 
 20
 Attorney incompetence may be a sufficient basis for default judgment. See Link v. Wabash RR. Co., 370 U.S. 626, 633-34, 82 S.Ct. 1386, 1390-91, 8 L.Ed.2d 734 (1962); Woodmore v. Git-N-Go, 790 F.2d 1497, 1498 (10th Cir.1986) (dictum); D.G. Shelter Products Co. v. Forest Products Co., 769 F.2d 644 (10th Cir.1985) (dictum). Redress for such incompetence is usually found in a suit for malpractice rather than on direct appeal. Where sanctions are concerned, however, we have cautioned that "[i]f the fault lies with the attorneys, that is where the impact of the sanction should be lodged." In re Sanction of Baker, 744 F.2d at 1442. We therefore require that "the court ... explicitly weigh whether sanctions against the offending attorney will not serve the court's legitimate purpose in imposing sanctions." D.G. Shelter Products Co., 769 F.2d at 645; see also In re Russell, 746 F.2d 1419, 1420 (10th Cir.1984) (requiring particularized statement by district court on choice of appropriate sanction and person against whom it is imposed).
 
 
 21
 We have no doubt in this case that sanctions of some kind are not only appropriate, but required.[2] The burden of litigation is too pressing, and trial courts' patience has too long been tried, to permit parties to evade the consequences of neglecting their cases. See Gates v. United States, 752 F.2d 516, 517 (10th Cir.1985) (Rule 37 is no longer a "paper tiger"). On the record presented to us, neither O'Neil nor Feinstein gave this case the attention it required. Feinstein never sent O'Neil the documents he needed to submit to plaintiffs, never arranged for depositions to be taken or interrogatories to be answered, and failed to make clear who was expected to prepare the pretrial memorandum. O'Neil gave Feinstein the impression that he had arranged for the trial to be postponed, failed to communicate the urgency of the need for defendants to appear in Cheyenne, and disappeared for three weeks without informing Feinstein.
 
 
 22
 We are unable to judge the extent to which defendants are personally at fault, because the district court made no findings as to them. In particular, the court made no findings on whether defendants' conduct met the willful noncompliance standard. Moreover, the court's order did not explain why the sanction was directed at defendants rather than at their attorneys. The district court found only that the "various reasons" offered by Feinstein on June 27 for defendants' failure to appear the following day were "without legal justification."[3] The finding does not identify the reasons she gave. We are therefore unable to assess their sufficiency under the willful noncompliance standard.[4] Given the substantial uncertainty as to what defendants other than Biller knew, and when, and given the emphasis on defendants' attorneys' fault in the findings the district court did make, we are unable to affirm the decision below. Cf. Woodmore, 790 F.2d at 1499 (remanding for explanation by trial court of why court dismissed case when fault appeared to be that of attorneys' alone); D.G. Shelter Products Co., 769 F.2d at 645 (remanding for explanation by trial court of why court granted summary judgment when fault was attorneys' alone); In re Russell, 746 F.2d at 1420 (remanding for explanation of dismissal where fault was attorney's alone).
 
 
 23
 In fairness to the trial judge, most of our decisions suggesting that the district court should place sanctions on the attorneys if that is where the fault lies were decided after the court's decision in this case. Moreover, none of our earlier decisions were cited to the court. We therefore consider it appropriate to reverse and remand for reconsideration in light of these cases. If the trial court concludes, after a review of the facts in light of our cases, that the sanctions are appropriately placed on the parties, it should make specific findings on the issue of willful noncompliance.
 
 
 24
 Our disposition of this case makes it unnecessary for us to address defendants' other issues on appeal.
 
 
 25
 REVERSED AND REMANDED.
 
 
 
 *
 Honorable Wesley C. Brown, Senior Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [1]
 The record is confused as to the actual date of the deposition. Some copies of the notice apparently had a typographical error
 
 
 [2]
 If the trial court finds that O'Neil and Feinstein failed to communicate with their clients during the course of the litigation, and in particular if they failed to inform their clients of such critical matters as court orders, it should consider the possibility of attorney discipline in federal court. In addition, it should consider referring the matter to state licensing authorities for appropriate discipline. Such conduct on the part of attorneys would appear to violate the Code of Professional Responsibility, and might call into question their fitness to practice law
 If, on the other hand, the court finds that O'Neil and Feinstein did properly communicate with their clients, there would clearly be a sufficient basis to sustain a default judgment.
 
 
 [3]
 Default Judgment Order, rec., vol. I, doc. 71, at 3
 
 
 [4]
 The only strong evidence on the record presented to us of defendants' personal fault is the failure of Biller to appear in Cheyenne. He undoubtedly had sufficient, although not extensive, notice, and we are inclined to agree with the district court that the reasons Biller gave in his affidavit--that he was too busy and could not get a flight to Cheyenne--are without legal justification. The first is not an excuse for disobeying a court order, cf. In re Standard Metals Corp., 817 F.2d at 629 (failure to attend court-ordered hearing because of business trip abroad is intentional failure where party had notice of hearing before trip), and no proof was presented as to the second other than Biller's and Feinstein's affidavits. The court's finding does not identify these as the reasons offered, however. The court did nothing more than find that the reasons Feinstein gave for the inability of all defendants to appear were "without legal justification." We are reluctant to infer a specific rejection of Biller's excuses and a finding of willful noncompliance on his part from such a vague statement