**In re ENDREX INVESTMENTS, INC., Debtor.**

**MAUNA LANI RESORT, INC., Applicant,**

**v.**

**ENDREX INVESTMENTS, INC., Respondent.**

**Bankruptcy Nos. 87–B–12005–M, 87–B–12005–M.**

United States Bankruptcy Court, D. Colorado.

March 31, 1988.

Nancy Miller, Sterling and Miller, P.C., Denver, Colo., for Endrex Investments, Inc.

Christina Bearman, Denver, Colo., for Mauna Lani Resort, Inc.

Joanne Speirs, Denver, Colo., for U.S. Trustee's Office.

## OPINION

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on the Joint Motion to Dismiss filed by the United States Trustee ("U.S. Trustee") and Mauna Lani Resort, Inc. ("MLRI"), the Debtor's principal secured creditor. A hearing was held in Open Court at which time the Applicants and the Debtor, through counsel, appeared. This Court has

jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

For the reasons set forth below, the Applicants' Motion to Dismiss is granted, and Debtor and Debtor's counsel, Sterling and Miller, P.C. and Nancy Miller, are assessed Applicants' attorneys' fees, as sanctions, for the filing and maintenance of a Chapter 11 case in bad faith.

## BACKGROUND AND FINDINGS OF FACT [1]

This Chapter 11 was filed October 7, 1987 by the Debtor. Debtor initiated this case after commencement of a foreclosure proceeding and appointment of a Receiver to manage and control the Debtor's only significant asset, a condominium unit located in Honolulu.[2] Debtor valued the condominium unit at $950,000.00;[3] the creditor appraised its value at $877,872.00. Creditor's claim, secured by the condominium, was approximately $864,872.00.

The Debtor is a family corporation created to hold title to the condominium in Hawaii; the wife owns all of the shares in the corporation, and the husband, Clyde J. Brannan, Jr., is the president of the corporation.[4] The corporation leases the condominium property to its president, Mr. Brannan, Jr. His rental or lease payments are essentially equal to the Debtor's required mortgage payments to MLRI. It appears the Debtor corporation has never shown a profit, has not paid its required annual corporate fees, and is not presently a corporation in good standing in Hawaii.

The Debtor's president, Mr. Brannan, Jr., refused or failed to make approximately eight monthly lease payments to the Debtor corporation. There has been no discerni-ble effort by the Debtor to meet its fiduciary obligation to collect on the rent arrearage owed to it by its president, Mr. Brannan, Jr. The failure of Mr. Brannan, Jr. to make his lease payments to the Debtor is the obvious cause of the Debtor's default in payment on MLRI's secured claim. Mr. Brannan, Jr. earned substantial income in six figures for the two months prior to the date of the hearing, yet made *no* lease payments to the Debtor.[5]

There are only three creditors in this case. Two creditors are associated with the condominium property, i.e., the creditor MLRI and the condominium association; one creditor is an insider, i.e., the Debtor's wife and sole owner of Debtor's stock.

Debtor apparently has no cash on hand and its president has no recollection of the location(s) of its bank account(s); he is unable to locate and produce, as requested and as subpoenaed, any of Debtor's corporate books and records. The case has been pending for over five months.

The exclusive plan period has expired and no plan has been filed by the Debtor. The only prospect of reorganization is, evidently, based on a private placement offering to finance "micro-algae" processing plants sometime in the future. It was speculative and remote in the extreme. That forecast of reorganization, moreover, had no relationship to or reliance on Debtor's retention of the condominium.

Debtor failed to file financial reports or supply financial data to the U.S. Trustee during the course of the case. Virtually no meaningful records or documents have been supplied to the Court, U.S. Trustee or

---

1. Most recited findings of fact are identical to those findings made by the Court at a prior relief from stay hearing and to which findings the Debtor did not object, contest or appeal. At that February 18, 1988 hearing, the Court granted relief from stay, issued findings of fact, conclusions of law, and expressly reserved until hearing on the pending Motion to Dismiss, a final determination as to the issue of bad faith.

2. Debtor also owned 80% of the stock in the La Mer, Inc. corporation, but placed no value on that asset.

3. Debtor originally valued the condominium at $1,200,000.00, but reduced that to $950,000.00 at the relief from stay hearing.

4. Clyde J. Brannan, Jr. was listed in Debtor's schedules as president, treasurer, and secretary of the Debtor corporation, but that designation was subsequently disputed by Debtor's counsel.

5. Clyde J. Brannan, Jr. acknowledged he made approximately $200,000.00 in January and February, 1988, but it is unclear what portion or how much was net income versus gross income.

creditor relative to assets, values, income and operations of the Debtor.

On March 9, 1988, the day before the hearing on the Joint Motion to Dismiss filed by MLRI and the U.S. Trustee, Debtor filed a consent to Motion to Dismiss and Request that the Court Vacate Hearing. Debtor asserted that the reason for the last minute consent was the Movants' failure to provide notice to Debtor of the pending Motion to Dismiss. This Court finds that, pursuant to testimony, MLRI caused the Motion to Dismiss to be hand delivered to Debtor's counsel on February 2, 1988, after receiving a telephone call from the office of Debtor's counsel requesting delivery of the Motion to Dismiss referred to in the Local Rule 23 Notice mailed to Debtor's counsel. Furthermore, at the hearing held before this Court on February 16, 1988, which resulted in the Court's Order dated February 18, 1988, the Court and counsel discussed the pending Motion to Dismiss. In its Order dated February 18, 1988, this Court expressly and explicitly reserved ruling on the bad faith issue until the hearing on the Motion to Dismiss was to be heard, March 10, 1988. Despite these repeated "notices," Debtor presented no evidence and made few substantive offers of proof at the hearing which had not been previously heard and considered by this Court, except its assertions that it had not had notice of the pending Motion served upon it.

## CONCLUSIONS OF LAW AND ORDER

### I.

█ *Cause for Dismissal of Chapter 11, Including Bad Faith.* An Order of Dismissal shall enter pursuant to 11 U.S.C. § 1112(b)(1), (2) and (3), because of (a) the continuing erosion of the estate's finances by accruing interest with little likelihood of any financial rehabilitation, (b) the Debtor's failure to submit a plan of reorganization and inability to effectuate a plan, (c) the unreasonable delay occasioned which is prejudicial to creditors, and (d) the Debtor's consent to dismissal.

█ The Chapter 11 case is also dismissed as a case filed in bad faith. The Court is entitled to dismiss a Chapter 11 case if it determines that a case has been filed in bad faith. *Matter of Little Creek Development Co.,* 779 F.2d 1068 (5th Cir. 1986); *In re Thirtieth Place, Inc.,* 30 B.R. 503 (9th B.A.P.1983); *In re Block K Associates,* 55 B.R. 630 (Bankr.Colo.1985). This concept is not new in the Tenth Circuit. *Breeding Motor Freight Lines, Inc. v. Reconstruction Finance Corp.,* 172 F.2d 416 (10th Cir.1949).

The Court may raise the issue of good faith *sua sponte* and has the inherent authority to do so. *Little Creek Development Co., supra* at 1071; *Block K Associates, supra* at 633. Here, however, the U.S. Trustee and MLRI moved to dismiss on grounds of a bad faith filing and MLRI earlier sought relief from stay alleging a bad faith filing, as well. The issue of bad faith was raised and heard at both the Motion for Relief hearing and at the subsequent Motion to Dismiss hearing.

To decide the issue of whether or not a Chapter 11 was filed in good faith, the Court must carefully consider and fairly weigh the particular facts and circumstances of each case. *Thirtieth Place, Inc., supra* at 505. It is "a conglomerate of factors," or the collective impact of facts and circumstances, not a single feature in a particular case, which will determine the good faith issue. *Little Creek Development Co., supra* at 1072.

The collective impact of the facts and circumstances in this case leave the Court with a clear and distinct view that this Chapter 11 case was not filed in good faith. The Debtor has no ongoing business, no cash, no cash flow, no available books and records, no identifiable bank account(s), and no profit. The Debtor's only valuable asset is a sumptuous abode in Hawaii utilized exclusively as an escape for the Debtor's president when the rigors of climate, business, and life in Aspen, his residence, become too burdensome for Mr. Brannan, Jr. Debtor corporation is a figment of Mr. Brannan, Jr.'s commercial creativity and is controlled by its only tenant, Mr. Brannan,

Jr. The Debtor might qualify as a business alter-ego of Mr. Brannan, Jr. *See, G.M. Leasing Corp. v. U.S.*, 514 F.2d 935 (10th Cir.1975).

Debtor filed Chapter 11 to derail the foreclosure and oust the Receiver, which it successfully accomplished. Indeed, the prompt retaking possession of the condominium after filing the petition was virtually the only demonstrable act Debtor undertook in Chapter 11 evincing an intent to be decisive, forthright, and successful in the case.

The facts in this case fit, with ease, various factors which characterize a bad faith filing identified in *Little Creek Development Co., supra,* and comport with several of "the badges of bad faith" recited in *In re Yukon Enterprises, Inc.*, 39 B.R. 919 (S.D.Cal.1984). Moreover, it has been specifically and repeatedly held that merely "the hope that some future purchaser may appear with a sufficiently substantial offer to support a plan of reorganization does not an effective reorganization make." *In re French Gardens, Ltd.*, 58 B.R. 959, 964 (Bankr.S.D.Tex.1986). That, precisely, is the circumstance in this case.

## II.

*Sanctions against Debtor and Counsel for Debtor for Bad Faith Filing.* Imposition of sanctions against a debtor and debtor's counsel for a bad faith Chapter 11 filing may be appropriate if circumstances warrant and the reasons for sanctions are sound. *French Gardens, supra* at 965; *In re Silver*, 46 B.R. 772 (D.Colo.1985).

▮▮▮ The Bankruptcy Court has certain inherent authority to impose sanctions, but it is to be used sparingly and only when and where justified. The Court also has a range of specific statutory grants of authority to impose sanctions, but again, they are to be used judiciously and only when and where applicable. *See, M.E.N. Co. v. Control Fluidics, Inc.*, 834 F.2d 869 (10th Cir.1987); *Smith v. U.S.*, 834 F.2d 166 (10th Cir.1987); *Matter of Sanction of Baker*, 744 F.2d 1438 (10th Cir.1984).

Specific authority to impose sanctions includes (1) 28 U.S.C. § 1927, to prevent an attorney from vexatiously and unreasonably increasing judicial proceedings (*French Gardens, supra* at 964; (2) Bankruptcy Rule 9011, to require reasonable inquiry and certification of facts submitted by documents filed with the Court, *Burkhart v. The Kinsley Bank*, 804 F.2d 588 (10th Cir.1986); *Skies Unlimited, Inc. of Colorado v. King*, 72 B.R. 536 (Bankr.Colo. 1987); (3) Bankruptcy Rules 7016(f), 7037(b) and 7041, to prevent unreasonable delay, failures to cooperate, and refusal to comply with Court orders in contested matters (B.R. 9014), discovery, and litigation. *M.E.N. Co. v. Control Fluidics, supra; Smith v. U.S., supra.*

▮▮ In this case, a Chapter 11 filing in bad faith justifies, perhaps requires, imposition of sanctions by payment of the creditor's attorneys' fees. The statutory authority for imposition of sanctions here is 28 U.S.C. § 1927, B.R. 9011, and the inherent right of the Court to protect its right to "management of its docket and (the) avoidance of unnecessary burdens on … courts, opposing parties or both." *Sanction of Baker, supra* at 1441.

Bankruptcy Rule 9011 provides in pertinent part that:

The signature of an attorney or a party constitutes a certificate by that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation … If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing

of the document, including a reasonable attorney's fee.

█ This rule, amended in 1983, imposes a more stringent standard of conduct on parties to litigation, and their attorneys, than that previously imposed. A specific subjective finding that the party or attorney acted in bad faith is not now required. The test is "one of reasonableness under the circumstances" and it is acknowledged that this slightly eased standard may trigger more violations of the Rule. *Skies Unlimited, supra* at 538. *Not incidentally, B.R. 9011 is also intended to encourage and is expected to produce increased care, candor and responsible conduct by litigants and their counsel in all judicial proceedings.*[6]

In this Chapter 11 that degree of care, candor and responsible conduct was lacking, indeed it was absent. The initiation of the case and filing the petition during foreclosure, followed by stiff opposition to MLRI's relief from stay motion, followed again by Debtor's refusal to file its consent to dismissal until the afternoon prior to the dismissal hearing impresses this Court with the strong belief that the Chapter 11 procedure was invoked principally, perhaps exclusively, to delay and harass the creditor and increase the cost of litigation. Almost six months of delay was obtained, absolutely nothing in a positive sense was accomplished in this reorganization.

The initial filing might be construed or could be deemed not in bad faith, but rather the product of urgent last minute maneuvers by a debtor scrambling to legitimately salvage assets. This is not an uncommon occurrence. Nonetheless, at some point after filing, the debtor and counsel must carefully evaluate and honestly assess the debtor's reorganization prospects. A timely and realistic analysis of debtor's finances, management, and future must be undertaken. Failure to do so, coupled with continuing, rigid opposition to creditors' reasonable efforts calls into question the care, candor, and responsible conduct required under B.R. 9011. Among other failures, this Debtor and counsel failed, utterly, to comply with simple discovery requests, they could not even locate the Debtor's books and records, and Mr. Brannan, Jr. could not even remember where the Debtor's bank accounts were located.

The conduct described above also violates the letter and the spirit of 28 U.S.C. § 1927 which provides as follows:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct.

The use and purpose of invoking Section 1927 is, not unlike that for B.R. 9011:

[Section] 1927 is a weapon which the court may use in order to protect the judicial process from abuse to punish those who have abused it, and to provide relief for the party who has had to contend with the sanctioned party's multiple litigation. *In re Trust Deed Center, Inc.*, 36 B.R. 846 (Bkrtcy.C.D.Cal.1984). The sanctions to be imposed are thus, not only proper, but necessary in order to protect the integrity of the Bankruptcy Code and the judicial process.

*French Gardens, supra* at 965.

In effect, again, the sanction is intended to encourage and effect greater care, candor, and responsible conduct by litigants in judicial proceedings.

█ To be subject to sanctions, the debtor's and counsel's conduct need not, necessarily, be contumacious, or involve chronic failures to perform, or be mean spirited.

---

**6.** That goal is not unlike the goal of discovery sanctions under F.R.Civ.P. 16(f) expressed by the Tenth Circuit: "[T]o give courts very broad discretion to use sanctions where necessary to insure not only that lawyers and parties refrain from contumacious behavior ... but that they fulfill their high duty to insure the expeditious and sound management of the preparation of cases for trial. [And] to insist that the court, the lawyers and the parties abandon habits which unreasonably delay and otherwise interfere with the management of trial preparation." *Sanction of Baker, supra* at 1440 and 1441.

On the contrary, incompetence, recklessness, or a pattern of negligent conduct resulting in unwarranted delays or "interference with the court's ability to manage its affairs in a sound and efficient manner may justify sanctions." *Sanction of Baker, supra* at 1440; *M.E.N. Co. v. Control Fluidics, supra* at 873; *In re Quintana,* 43 B.R. 668 (Bankr.Colo.1984).

The only questions remaining to be decided are against whom the sanction should be imposed and whether the legal fees assessed are reasonable.

■ The Court is required to try and determine where the fault lies, as between counsel and client, and direct sanctions at the proper party. *Smith v. U.S., supra* at 171.

> If the fault lies with the attorney, that is where the impact of sanction should be lodged. If the fault lies with the clients, that is where the impact of the sanction should be lodged.
>
> *Sanction of Baker, supra* at 1442.

It is difficult, indeed impossible, to precisely and accurately differentiate between counsel and Debtor as to the particular conduct and fault which justifies imposition of sanctions. The Court is not omniscient as to the internal communications, decision-making process, or the conduct and management of a given Chapter 11 case and to intrude into that matter too deeply can invade the attorney/client privilege. In this case the Court can rely only on the Court record, offers of proof, argument, and presentations of counsel.

Here, it is the *collective impact* of different events and conduct which resulted in the finding of "bad faith" filing and which warrants sanctions. Some events and conduct are more easily ascribed to the Debtor (i.e., the decision to file, failure to produce subpoenaed books and records, refusal to collect rent arrearage, and overall strategy), and some can be more easily attributed to counsel (i.e., failure to meet reporting requirements, filing consent to dismissal

only at the latest possible moment, continued efforts to prolong case and use of delay tactics). Unfortunately, however, responsibility for much of what was done is blended between the client and the attorney ... much of the fault is blurred. In such a circumstance actual allocation of fault is not mandated. *Smith v. U.S., supra* at 171. There is fault enough in the filing and maintenance of this Chapter 11 to be shared between the client and the attorney.

The Court shall require that the client and attorney each be responsible for and pay one-half of the fees and expenses awarded as sanctions.

Counsel for the creditor supplied to the Court and the Court reviewed a detailed Affidavit respecting fees and costs incurred and legal services provided.[7] Counsel's statement and Affidavit of fees appears to comply, where applicable, with the guidelines of fee applications of *Ramos v. Lamm,* 713 F.2d 546 (10th Cir.1983) and Bankruptcy Rule 2016. Total fees were $7,244.00 and costs, or disbursements, were $589.09. No objection or critique of the fee Affidavit has been submitted to the Court by the Debtor.

■ The Court will reduce the fees by (a) the amount of the "bonus" paid by the secured creditor to its counsel, (b) the fees of senior counsel, Mr. Seawell, which might reasonably be deemed duplicative of Ms. Bearman, creditor's lead counsel, and (c) the fees charged by counsel for preparation of the fee Affidavit requested by the Court. Otherwise the hours, attorneys' billing rates, fees and tasks performed appear to be reasonable and necessary under the circumstances. Thus, fees in the sum of $5,454.00 plus costs of $589.09 for a total of $6,043.09, shall be paid by the Debtor and Debtor's counsel to the creditor.

IT IS THEREFORE ORDERED that (1) the within Chapter 11 case shall be and is

---

7. The Affidavit for counsel Thomas C. Seawell, Christina Bearman, and Charles Schlosser consisted of a detailed statement of fees and expenses incurred, a narrative description by category of services provided, specification of hours, billing rates and attorney time and rates, and description of tasks performed by each attorney on particular dates.

hereby DISMISSED and (2) the Debtor and Debtor's counsel shall be assessed and shall pay, as provided for above, the creditor's attorneys' fees and costs in the amount of $6,043.09, within forty-five (45) days after the date of this Order.