**In re Richard Harmes ROSSMILLER, Debtor.**

**RESOLUTION TRUST CORPORATION, as Receiver for Hill Financial Savings Association and Federal Deposit Insurance Corporation, as Receiver for Buena Vista Bank & Trust, Plaintiffs–Appellees,**

v.

**Richard Harmes ROSSMILLER, Defendant–Appellant.**

No. 91–K–1211.
Bankruptcy No. 89–B–13973–C.
Adv. No. 90 D 391.

United States District Court,
D. Colorado.

May 28, 1992.

## MEMORANDUM DECISION ON APPEAL

KANE, Senior District Judge.

This case is before the court on Richard Rossmiller's ("debtor") appeal from an order of the bankruptcy court entering a default judgment against the debtor as a sanction for his failure to comply with the court's discovery orders. The debtor asserts that the bankruptcy court abused its discretion in entering the default order and in refusing to reconsider the default order in the face of certain alleged governmental misconduct. I review the bankruptcy court's decision only to determine whether it abused its discretion. Perceiving no abuse of discretion, I affirm the entry of default.

### I. *Facts and Procedural History*

On October 13, 1989, the debtor filed a petition under chapter 7 of the bankruptcy code. He sought to discharge debts of approximately 25 million dollars. On May 14, 1990, the Resolution Trust Company ("RTC") and the Federal Deposit Insurance Corporation ("FDIC") (collectively "receivers") filed a complaint to determine dischargeability of debt. The complaint was lengthy and factually complicated. It alleged thirteen claims for relief under 11 U.S.C. § 727(a)(2)(A), § 727(a)(3), § 727(a)(4)(A), § 727(a)(4)(D), § 727(a)(5), and 11 U.S.C. § 523(a)(2)(B). The debtor filed an appropriate answer on July 18, 1990. His attorneys at the time were Skeen & Pearlman, P.C.

On September 20, 1990, the receivers served written interrogatories and requests for production of documents on the debtor. Before filing their adversary complaint, the receivers had received approximately four boxes of documents from the debtor directly, had conducted a three day deposition of respondent, sought and received numerous documents under rule 2003, and received from the debtor numerous signed waivers and releases directed to the platoon of lawyers and accountants who had previously assisted the debtor in his corporate and personal dealings. The receivers' discovery requests sought identification of certain personal and corporate bank ac-

James V. Pearson, Pearson, Milligan & Horowitz, Denver, Colo., Mark W. McGrory, Morrison & Hecker, Overland Park, Kan., for Resolution Trust Corp.

Pamela J. Strauss, F.D.I.C., Denver, Colo.

Mathew D. Skeen, Denver, Colo., for Richard Harmes Rossmiller.

Clifford Eley, Denver, Colo., Trustee.

counts, information concerning the alleged fraudulent transfers to certain family trusts, and information concerning the formal corporate identities through which the debtor had operated before filing his petition in bankruptcy.

The debtor sought and received extensions of time within which to respond to the receivers' discovery request until December 7, 1990. By that date, new counsel, J. Scott Detamore, Esq., had substituted for Skeen and Pearlman, P.C. on behalf of the debtor. The debtor sought substitution of counsel because he thought that his former attorneys would be necessary witnesses in the adversary proceeding. On December 7, 1990, the debtor filed a motion for protective order, seeking to avoid any response to the interrogatories and requests for production. Germane to this appeal, the debtor claimed that many of the documents the receivers sought were no longer in his possession and control. Before he moved to California in 1989, the debtor arranged to store commercially approximately 600 boxes of corporate and personal records at Security Archives of Denver ("the archives"). Because the debtor was in California and because he could not afford the retrieval fees for the boxes, he claimed he could not produce all the documents the receivers sought nor give complete, thorough and unqualified answers to written or oral interrogatories.

On December 17, 1990, the debtor made some partial responses to some of the receivers' discovery requests. After the receivers moved to compel responses, the bankruptcy court held a hearing on January 15, 1991. After extensive argument, the bankruptcy court determined that the debtor's answers were incomplete and evasive. It overruled the bulk of the debtor's objections to the receivers' discovery requests. It went through each of the discovery requests in detail and entered specific orders as to each request for production and each interrogatory. The court specifically determined that the debtor had the obligation to determine whether and where certain responsive documents could be located. He ordered the debtor either to identify the specific box at the archives in which the relevant documents could be lo-

cated or to state that no responsive documents existed. The bankruptcy court ordered the debtor to respond by February 14, 1991. He did not. The receivers then filed for default judgment on March 28, 1991, claiming that such a sanction was appropriate in light of the debtor's pattern of behavior with respect to interrogatories and requests for production of documents.

On March 29, 1991, the debtor's counsel, J. Scott Detamore, Esq., moved to withdraw. On April 17, 1991, the bankruptcy court granted the request to withdraw, but only after resolution of the pending motion for default. On April 15 and 24, 1991, the debtor submitted additional responses to the receivers' discovery requests. On May 20, 1991, the bankruptcy court heard argument on the motion for default. The debtor's counsel advised the court that the debtor had "done all that he could do."

> THE COURT: How much longer should I give you?
>
> MR. DETAMORE: —at this point, the answer that Mr. Rossmiller would give is he's done all he can do.
>
> THE COURT: Well, that's fine. If that's his answer, then he's going to be defaulted.
>
> MR. DETAMORE: That is his answer, Your Honor.
>
> THE COURT: All right.
>
> MR. DETAMORE: He tells me that he's given everything that he has or has access to, and anything else that he hasn't given would be in those boxes.

The bankruptcy court again found that the debtor had not answered fully, completely and satisfactorily. It observed that the debtor had

> chosen to use this Bankruptcy Court for his own purposes. He then moves to California and pleads an inability to respond to discovery.
>
> The Court believes that that is nonsense. There is no evidence to support his inability to come back here to assist in obtaining the information. He has not made a good faith effort to answer the discovery....
>
> [T]he Court is satisfied that Mr. Rossmiller has engaged in bad faith in failing to

obey the Court's order of January 15. The Court also notes that the—that Mr. Rossmiller filed his voluntary petition under Chapter 7 on October 13, 1989. There were many inaccuracies and omissions in his schedules, and that the plaintiffs have attempted to piece in since the schedules were filed and since the Section 341 meeting ... was held, and at every turn, Mr. Rossmiller has obstructed their attempt to obtain information to which they are clearly entitled.

III, Record on Appeal at 27–28. The court then denied discharge under § 727 and entered judgment under § 523 of the code in an aggregate principal amount of $26,397,-858.84 plus interest.

The debtor moved for reconsideration on June 10, 1991. The debtor, through his original lawyers, Skeen & Pearlman, P.C., asserted that he had never authorized Mr. Detamore "to tell the court that he would not or could not comply with the discovery requests and Court order." He claimed that he had always planned and intended to comply fully with the discovery requests and that any failure to do so was Mr. Detamore's responsibility. He intimated that Mr. Detamore had been less than prepared and zealous at the May 20, 1991 hearing because he had not been paid and had been allowed to withdraw upon completion of the hearing on the motion for default. The debtor also sought an additional sixty days within which to answer the discovery requests.

Thereafter, on June 18, 1991, the debtor filed a motion to require plaintiffs to turn over documents, for sanctions and renewed his motion for a protective order. In it, the debtor alleged that the receivers had misled the bankruptcy court throughout their attempts to compel discovery. In particular, the debtor claimed he learned on June 14, 1991 that in August, 1990 the archives had destroyed many of the documents previously stored and that the receivers had actual knowledge of the archives' intent to destroy the documents and took no action to prevent their destruction. He also claimed that the FDIC and the FBI had removed, respectively, 16 and 196 boxes of records from the archives when destruction was threatened. Finally, debtor claimed that the receivers had been dishonest in their presentations to the court at the hearings in January and May, 1991 by their failure to disclose that the very documents they sought were either under their own control, in the hands of the F.B.I., or already destroyed by the archives.

The bankruptcy court heard argument on the motion for reconsideration on July 1, 1991. It heard an offer of proof from the debtor to the effect that the debtor had never authorized Mr. Detamore to refuse to produce the discovery requested. It also heard an offer of proof with respect to the removal and destruction of the documents formerly located at the archives. The court rejected the debtor's claim that Mr. Detamore was not authorized to speak for him. The court also concluded that the debtor had not established its burden of showing a manifest error of law or fact and thus refused to overturn the default judgment. This appeal followed.

## II. *Discussion*

█ Federal R.Civ.P. 37(b)(2)(C) and 37(d) permit a court to enter a default judgment against a party who fails to obey an order to provide discovery or who fails to respond to interrogatories or requests for production. I review the imposition of sanctions for abuse of discretion under the totality of the circumstances.[1] *M.E.N. Co. v. Control Fluidics, Inc.*, 834 F.2d 869, 872 (10th Cir.1987). A default judgment is a harsh sanction that will be imposed only when the failure to comply with discovery demands is the result of " 'wilfulness, bad faith, or [some] fault of petitioner' rather than inability to comply." *Id.* (*quoting Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 1095, 2 L.Ed.2d 1255 (1958)). A "wilful failure" is an intentional failure rather than involuntary noncompliance. 834 F.2d at 872–73. "If the fault lies with the attor-

---

**1.** I am also mindful that a party's failure to produce information to which it has access may justify a finding that the information would be contrary to the recalcitrant party's position. *Mammouth Oil Co. v. United States,* 275 U.S. 13, 51, 48 S.Ct. 1, 9, 72 L.Ed. 137 (1927).

neys, that is where the impact of sanction should be lodged." *Mulvaney v. Rivain Flying Serv., Inc. (In re Baker)*, 744 F.2d 1438, 1442 (10th Cir.1984) (*en banc*), *cert. denied*, 471 U.S. 1014, 105 S.Ct. 2016, 85 L.Ed.2d 299 (1985). However, a client is bound by his lawyer's representation "when the lawyer (or the client) makes a tactical decision and his noncompliance with the court's directive is not a product of inadvertence." *Smith v. U.S.*, 834 F.2d 166, 171 (10th Cir.1987). A court must determine whether a course of conduct results from mere inattention by counsel or is a deliberate strategy. In making findings on the issue of fault, a court should consider the factors set forth in *Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1465 (10th Cir.1988). Those factors include (1) the degree of actual prejudice to other party; (2) the amount of interference with the judicial process; and (3) the culpability of the litigant. Finally, the cases teach that a court should not enter a default judgment without first considering if lesser sanctions would be effective. *In re Rains*, 946 F.2d 731, 733 (10th Cir.1991); *Ocelot*, 847 F.2d at 1465.

### A. Sanctions for Discovery Abuse

The debtor argues that the bankruptcy court failed to make sufficient findings concerning wilfulness, failed to distinguish between his lawyer's culpability and his own, and failed to consider whether lesser sanctions would have been effective. I disagree. The record is replete with evidence of the debtor's bad faith. The debtor originally received the discovery requests in September, 1990. He sought extensions to respond until December, then filed for a protective order on the grounds that he had essentially provided the material sought by dint of his voluntary surrender of documents, his deposition, and by waiving any professional privileges with respect to his former lawyers and accountants. After an extensive question by question review of the interrogatories and requests for production, the bankruptcy court ordered the debtor to answer the discovery requests within thirty days. He specifically ordered the debtor to provide the documents under the custody and control of the archives.

Again, the debtor did not. Instead, he again tried to argue that the discovery requests were overbroad, unduly burdensome, and impossible to fulfill since many of the documents were located in the archives. The debtor even filed an affidavit to that effect in opposition to the motion for default judgment. In point of fact, the debtor never produced the ante-nuptial agreement the receivers requested, never produced expense reports for the year before bankruptcy, and never provided certain insurance policies the receivers sought. Furthermore, his other answers were both unbelievable and disingenuous. He claimed to be unaware of *any* documents that would reflect his compensation and interest in six business entities he owned and operated in the year before bankruptcy. He initially failed to identify in his schedules any business or personal bank account information. In his answers he identified some thirteen accounts, but again failed to provide the account number for the personal account listed. He left out critical detail about the transfer of automobiles to his wife. He provided less than full disclosure about certain tap fees which had been held in trust for him. He repeatedly referred the receivers to the archives, even in the face of the bankruptcy court's specific order to the contrary. I need not go on. There was ample evidence to support the bankruptcy court's conclusion that the debtor had wilfully refused to comply with its orders. His conduct is a study in arrogance.

I also find that the court properly distinguished between attorney and client in imposing sanctions. First, the court specifically rejected, as incredible, the debtor's offer of proof that Mr. Detamore was not authorized to speak for the debtor as he did during the May hearing. In this regard, the court expressed its willingness to hear and consider testimony from Mr. Detamore to the effect that he made unauthorized statements on his client's behalf. The debtor chose never to produce Mr. Detamore for such testimony. Second, the court specifically noted in the May 20 hearing that the debtor "had not made a good faith effort to answer the discovery, and

that I am not suggesting that you [the lawyer] are in any way responsible." Further, the court specifically referred to both the Supreme Court's decision in *National Hockey League v. Metropolitan Hockey Corp., Inc.,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976), and to this circuit's decision in *Bud Brooks Trucking v. Bill Hodges Trucking,* 909 F.2d 1437 (10th Cir. 1990). While the court used some ambiguous language in apportioning relative responsibility, it is clear to me that he distinguished between lawyer and client, and properly held the debtor, not the debtor's lawyer, responsible for the course and plan of the discovery abuse.

In the context of this case, there was no reason to make extensive findings about the effectiveness of sanctions other than dismissal. The debtor's counsel's colloquy with the court on May 20, 1991 convinces me that the debtor had no intention of complying with the court's orders, even if given additional time within which to respond. It was not until default entered that the debtor, himself, even bothered to make an appearance in the bankruptcy court. Under such circumstances, no specific findings are essential.

### B. Reconsideration

Under Fed.R.Civ.P. 59, a trial court may reconsider a judgment previously entered upon a showing that a manifest error of law or fact caused the entry of the earlier judgment. I review the bankruptcy court's decision on the abuse of discretion standard. The debtor argues that he could not have complied with the bankruptcy court's order of January, 15, 1991, because the archives had destroyed all remaining documents as early as August, 1990. He also claims that the receivers were dishonest in their arguments to the court in January because they did not disclose that they knew the documents had been destroyed or removed from the archives by the F.D.I.C. and the F.B.I. The debtor thus argues that the default judgment should be reversed because the bankruptcy court premised it on a faulty assumption of fact, namely that the records necessary for the debtor to answer the discovery requests were in the archives in Denver. The receivers acknowledged that they were aware that

some of the documents had been removed from the archives but affirmatively stated that they believed, at the time of the January 15, 1991 argument that the bulk of the documents were still at the archives. The bankruptcy court found the debtor's argument unpersuasive as do I.

The bankruptcy court ruled that the debtor had an obligation both to produce the documents requested and to answer the interrogatories asked. The bankruptcy court *did not* rule conditionally. It did not rule that the debtor should produce the documents and answer the interrogatories only if the documents were in the archives. The debtor's obligation after the January 15, 1991 ruling was to make a good faith effort to answer the interrogatories and produce the requested documents. The debtor made desultory efforts at best. The bankruptcy court imposed sanctions to punish this debtor and to prevent similar discovery abuse from happening in any other case. The bankruptcy court did not abuse its discretion.

The judgment of the bankruptcy court is affirmed.