F I L E D
**United States Court of Appeals
Tenth Circuit**

**DEC 22 2003**

**PATRICK FISHER**
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

EBI SECURITIES CORPORATION,
INC., a Colorado corporation on behalf of
itself and Net Command Tech, Inc.,
formerly known as Corsaire, Inc., and
Corsaire Snowboard, Inc.,

      Plaintiff-Counter-Defendant-
      Appellee,

v.

NET COMMAND TECH, INC., a Florida
corporation, formerly known as Corsaire,
Inc., formerly known as Corsaire
Snowboard, Inc.,

      Defendant,

and

RENE MICHAEL HAMOUTH,
individually; THE HAMOUTH FAMILY
TRUST; 411396BC, Ltd.,

      Defendants-Counter-Claimants-
      Appellants.

No. 01-1524

(D.C. No. 99-K-1361)
(D. Colorado)

---

**ORDER AND JUDGMENT**[*]

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Before **EBEL**, **BRISCOE** and **TYMKOVICH,** Circuit Judges.

Defendants Rene Michael Hamouth (Hamouth), The Hamouth Family Trust (Trust), and 411396BC, Ltd., (BC) were sued by plaintiff EBI Securities Corporation, Inc., (EBI) for allegedly having violated § 16(b) of the Securities Exchange Act of 1934. After defendants failed to respond to plaintiff's discovery requests, comply with an agreed-upon settlement, and appear at a show cause hearing, the district court entered default judgment against them. Defendants now appeal. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and reverse and remand for further proceedings.

I.

EBI is a corporation with its principal offices in Englewood, Colorado. At all times pertinent, EBI was a broker/dealer licensed with the National Association of Securities Dealers, Inc. Hamouth, a Canadian citizen, was a director and controlling stockholder of Corsaire Snowboard, Inc., a Delaware corporation with its principal place of business in West Vancouver, British Columbia. Hamouth also beneficially owned and controlled or directed the Trust and BC.

On July 16, 1999, EBI filed this action against defendants, alleging defendants Hamouth, the Trust, and BC wrongfully realized short-swing profits from trading the common stock of Corsaire in violation of § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b). The summons and complaint were served on defendants by Canadian

2

authorities pursuant to the Hague Convention on November 9, 1999. On November 29, 1999, defendants requested an extension to December 20, 1999, to file their answer, which was granted.

On December 10, 1999, Jeffrey J. Scott, defendants' first attorney, filed a motion to withdraw. Scott's motion advised defendants

> that "[t]hey [were] personally responsible for complying with all Court orders and time limitations established by any applicable rules," that "they [could not] appear without counsel admitted to practice before [the district court]," and that "[a]bsent prompt appearance of substitute counsel, pleadings, motions, and other papers may be stricken, and default judgment or other sanctions may be imposed against them."

Aplee. Br. at 4 (quoting motion to withdraw). The district court granted Scott's motion on December 13, 1999, and a copy of the order was served on the defendants.

Defendants failed to file an answer or otherwise respond to EBI's complaint. On February 2, 2000, EBI filed a motion for entry of default and default judgment. On February 3, 2000, the district court granted EBI's motion and, on February 15, 2000, entered default judgment against defendants "[i]n the amount of $226,914.00 plus interest in the amount of $54,762.10." App. at 19.

On the date default judgment was entered, defendants' second attorney, Mark Appleton, entered his appearance and filed on defendants' behalf a motion for reconsideration of the district court's entry of default judgment. The motion alleged that defendants "were unable to retain Colorado counsel" after withdrawal of their first counsel. Id. at 23. The motion further alleged that defendants would "be able to show

3

good cause for the failure to file an Answer to the Complaint and that they ha[d] meritorious defenses to the claims set forth in the Complaint." Id. at 24. The district court granted defendants' motion on March 16, 2000. The district court concluded that Federal Rule of Civil Procedure 55(b)(2), which generally requires that a party against whom a default judgment is sought be served with written notice "'at least 3 days prior to the hearing on such application,'" had been violated because the court had granted EBI's motion on February 3, 2000, the same day defendants were served with a copy of the motion. Id. at 28.

During discovery, EBI served a set of combined interrogatories and requests for production of documents on defendants. Although defendants' responses were originally due on September 19, 2000, EBI agreed to two extensions. Defendants ultimately failed to respond and EBI filed motions to compel and for sanctions on January 19, 2001. At the conclusion of the hearing on EBI's motions on March 28, 2001, the district court granted EBI's motion to compel. In support of its ruling, the district court concluded "[t]here ha[d] been no adequate showing of good cause to justify [defendants'] failure" to timely respond or object to the discovery requests and that, accordingly, "all objections to the discovery requests ha[d] been waived." Id. at 214. The court awarded EBI costs and fees associated with its motion, and directed defendants to "answer the interrogatories and produce all documents responsive to the production requests on or before April 10, 2001." Id. at 215.

4

Defendants failed to comply with the district court's order compelling them to respond to EBI's discovery requests. On April 17, 2001, EBI filed a motion for an order to show cause. Before responding to EBI's motion, defendants' second attorney, Mark Appleton, moved to withdraw on April 25, 2001, and notified defendants "of their duties and obligations and the consequences of failure to abide by them." Aplee. Br. at 6. The following day, Appleton filed on behalf of defendants a response to EBI's motion for order to show cause. On April 27, 2001, the district court granted Appleton's motion to withdraw. On May 3, 2001, the district court set a hearing on EBI's show cause motion for May 22, 2001. On May 21, 2001, the parties entered into a settlement agreement and the May 22 hearing was vacated.

Defendants subsequently failed to tender payment to EBI under the terms of the settlement agreement, and EBI requested revival of the case on the district court's docket. On August 27, 2001, the district court granted EBI's request to revive the case and rescheduled the hearing on EBI's motion to show cause for September 24, 2001. Defendants failed to appear at the show cause hearing. The district court declared the defendants in default and set a hearing for October 9, 2001, "to enter an amount of judgment and . . . take evidence on that." App. at 243. To ensure that defendants received notice of the hearing, the district court directed EBI to serve defendants "by certified mail, return receipt requested, and also by ordinary mail in case there is no return receipt provided." Id.

5

On October 11, 2001, the district court conducted the scheduled hearing, but defendants did not appear. The court entered judgment in EBI's favor against defendants in the amount of $359,724.05 on October 12, 2001. Defendants filed a timely notice of appeal on November 9, 2001. Since then, defendants' third set of attorneys have filed a motion to withdraw and we have granted that motion.

II.

Federal Rule of Civil Procedure 37(b)(2) authorizes a district court to sanction a party who "fails to obey an order to provide or permit discovery." Included among the available sanctions is the entry of "judgment by default against the disobedient party." Fed. R. Civ. P. 37(b)(2)(C). We review for abuse of discretion a district court's decision to impose the sanction of default judgment under Rule 37(b)(2). See Ruplinger v. Rains, 946 F.2d 731, 732 (10th Cir. 1991); M.E.N. Co. v. Control Fluidics, Inc., 834 F.2d 869, 872-73 (10th Cir. 1987); see also Dennis Garberg & Assoc., Inc. v. Pack-Tech Int'l Corp., 115 F.3d 767, 771 (10th Cir. 1997) (applying similar standard of review to default judgment entered pursuant to Rule 55).[1]

---

[1] The district court did not cite any specific rule when it entered default judgment against defendants. Although Rule 55(a) allows for entry of default, there is a split of authority regarding the scope of that rule. Compare Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 10A Federal Practice and Procedure § 2682, at 16-18 (3d ed. 1998) (concluding Rule 55(a) applies only where party has failed to respond in some way to one of the pleadings listed in Federal Rule of Civil Procedure 7(a)), with Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 918-19 (3d Cir. 1992) (affirming entry of default judgment under Rule 55(a) for defendants' failure to obtain substitute counsel, file a pretrial memorandum, and respond to discovery requests). We find it unnecessary to

Although the standard of review is generally deferential, we have emphasized that "a default judgment is a harsh sanction." FDIC v. Dailey, 973 F.2d 1525, 1530 (10th Cir. 1992); see M.E.N. Co., 834 F.2d at 872. Thus, "due process requires that 'failure' [to comply with a discovery request/order] is a sufficient ground only when it is the result of willfulness, bad faith, or some fault of [the offending party] rather than inability to comply." M.E.N. Co., 834 F.2d at 872 (internal quotations omitted). We have "defined a willful failure as 'any intentional failure as distinguished from involuntary noncompliance. No wrongful intent need be shown.'" Id. at 872-73 (quoting In re Standard Metals Corp., 817 F.2d 625, 628 (10th Cir. 1987)).

It is also necessary for a district court to ensure that default judgment is a "just" sanction for the offending party's misconduct. See Ehrenhaus v. Reynolds, 965 F.2d 916, 920-21 (10th Cir. 1992) (discussing dismissal of claims as a sanction under Rule 37(b)(2)). Thus, in addition to considering the culpability of the offending party, the district court also typically should consider a number of other factors on the record, including (1) the degree of actual prejudice to the non-offending party; (2) the amount of interference with the judicial process caused by the offending party; (3) whether the court warned the offending party in advance that default judgment would be a likely sanction for noncompliance; and (4) the efficacy of lesser sanctions. See id. at 921. "These

decide whether the district court could have relied on Rule 55(a) because the misconduct at issue, i.e., failing to respond to plaintiff's discovery requests and failing to appear at the show cause hearing, clearly fell within the scope of Rule 37(b)(2).

7

factors do not constitute a rigid test; rather, they represent criteria for the district court to consider" in selecting a sanction. Id. "Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is [default judgment] an appropriate sanction." Id. (internal quotations omitted).

III.

Defendants contend that the default judgment entered against them by the district court must be vacated because the district court "failed to make adequate findings regarding (a) whether the discovery difficulties were due to fault or inadvertence, and (b) why lesser sanctions would have been ineffective." Aplt. Br. at 11-12.[2]

Although the record on appeal strongly suggests that defendants were generally uncooperative and personally responsible for the failure to respond to the court's discovery order, the district court made no findings to this effect. At most, the court stated that it "agree[d]" with EBI's counsel that Hamouth did not "think a lot of our [judicial] system here in the U.S." and "d[id] not want to engage in this system, play by the rules." App. at 241. Further, there was no explanation by the district court as to why a sanction less than default judgment would have been inappropriate. Instead, the district court simply stated that it was "not going to be kicked around." Id. at 243.

---

[2] Defendants have not challenged the district court's consideration of the other factors outlined above (e.g., the degree of actual prejudice to the plaintiff), and thus we consider those factors to have been conceded in favor of plaintiff. It would, nevertheless, be helpful on remand if the district court would recite on the record its findings regarding each of the relevant factors.

It is therefore impossible "to conclude on this record that no abuse of discretion has occurred." Rains, 946 F.2d at 734 (finding similar deficiencies on the part of district court in imposing default judgment). Thus, we conclude it is necessary to "reverse the judgment and remand th[e] case to the district court for entry of findings regarding [defendants'] willfulness, bad faith or other fault in failing to" comply with the district court's discovery order (and to appear at the show cause hearing), "and for findings regarding the possible appropriateness of lesser sanctions."[3] Id.

The judgment of the district court is REVERSED and the case REMANDED to the district court for further proceedings consistent with this order.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

---

[3] In light of this conclusion, we find it unnecessary to address the remaining issues asserted by defendants on appeal.

9