2008 UT 82

**Margaret KILPATRICK, individually, and as personal representative on behalf of the legal heirs of James Kilpatrick, Deceased, Plaintiff and Appellant,**

v.

**BULLOUGH ABATEMENT, INC., et al., Defendants and Appellees.**

**Marvin Kirkham and Carolyn Kirkham, Plaintiffs and Appellants,**

v.

**Garlock Sealing Technologies, LLC, et al., Defendants and Appellees.**

**Nos. 20060887, 20070156.**

Supreme Court of Utah.

Dec. 12, 2008.

Attorneys:[1] Robert G. Gilchrist, S. Brook Millard, Bronson D. Bills, Alan R. Brayton, Courtney G. Broaden, Salt Lake City, for appellants.

Michael F. Skolnick, Shawn McGarry, David Bernstein, Salt Lake City, for appellee. Bullough Abatement, Inc.

Joseph J. Joyce, Salt Lake City, for appellee Garlock Sealing Technologies, LLC.

PARRISH, Justice:

## INTRODUCTION

¶ 1 These cases are two of several asbestos-related cases governed by a Case Management Order (the "CMO") that was adopted in 2001 and applies routinely to all asbestos-related litigation brought by the firms involved in drafting the CMO. One of the "Additional Discovery" obligations imposed by the CMO was an autopsy following the death of any plaintiff. Margaret Kilpatrick and Carolyn Kirkham (collectively, the "plaintiffs") both failed to procure an autopsy before their husbands were respectively cremated and buried. As a sanction for the violation of the CMO, the district court dismissed both cases. Plaintiffs appealed, arguing that their violations of the CMO were neither willful nor in bad faith. The two cases were consolidated on appeal. We hold that the district court's dismissal lacked an evidentiary basis to establish fault and we therefore reverse.

## FACTS

### I. CASE MANAGEMENT ORDER

¶ 2 The facts are not in dispute. In 2001, anticipating a substantial increase in asbestos litigation, the Third District Court created a "Master Case File" for asbestos litigation, *In re Asbestos Litigation*, Third District No. 010900863–AS. In an effort to efficiently manage these cases, the district court directed counsel for the plaintiffs and the defendants to develop a case management order that would be applicable to all asbestos cases.

---

**1.** Because there are many defendants involved in these proceedings, there are also many attorneys. We list only counsel for the above-listed appellees involved in this appeal.

In May 2001, the district court adopted the first version of the CMO, which was intended to facilitate the administration of asbestos cases by reducing multiple filings and hearings, minimizing discovery disputes, and setting out a standard for the orderly disposition of cases.

¶ 3 One of the discovery provisions in the CMO required an autopsy upon the death of a plaintiff (the "autopsy requirement"). Section III–5 of the CMO provides:

*Notice of Death and Autopsy:* Plaintiff's attorney, upon learning of the death of Plaintiff shall immediately notify counsel for Defendants of Plaintiff's death.

a. Plaintiff's spouse or another of plaintiff's representatives shall produce the body of the deceased for one full and complete autopsy, including the thoracic and abdominal cavities, to be performed by the state medical examiner or a competent pathologist designated by plaintiff's counsel unless otherwise ordered by the Court upon good cause shown.

b. A showing of "good cause" may include religious beliefs and family preferences regarding autopsies, although these factors are not necessarily determinative of the issue.

c. Appropriate and adequate quantities of tissue shall be obtained and preserved for inspection and review by pathologists selected by the parties and all tissue samples selected and preserved at the autopsy shall be made available to all parties for appropriate medical and pathological testing. [CMO 1, 10]

The CMO was amended twice, most recently in September 2003; however, the autopsy requirement remained unaltered.

¶ 4 The CMO was the product of negotiation among all interested parties. As one of the primary law firms for asbestos-related litigation in Utah, Brayton Purcell participated in developing the CMO. For this reason, the CMO applies to all asbestos related cases filed by Brayton Purcell in Salt Lake County. Margaret Kilpatrick and Carolyn Kirkham are two of several plaintiffs represented by Brayton Purcell in asbestos-related law suits.

## II. KILPATRICK

¶ 5 James Kilpatrick and his wife Margaret filed a complaint in February 2001 for personal injury and loss of consortium due to Mr. Kilpatrick's alleged exposure to asbestos. During the course of litigation, Mr. Kilpatrick signed an authorization for his counsel to procure a full and complete autopsy upon his death. Mrs. Kilpatrick neither signed nor knew of the authorization. On July 5, 2003, Mr. Kilpatrick passed away and was cremated before an autopsy was performed. Following Mr. Kilpatrick's death, Mrs. Kilpatrick substituted herself as the named plaintiff and amended the complaint to include claims for survival and wrongful death. In 2005, Defendant Burlington Northern & Santa Fe Railway Company ("BNSF") filed a motion to dismiss the amended complaint for failure to comply with the CMO by providing Mr. Kilpatrick's body for an autopsy.

¶ 6 The court dismissed Mrs. Kilpatrick's suit in 2006 in two separate orders relating to two separate parties. First, in March, the court issued a memorandum decision concluding that Mrs. Kilpatrick's failure to obtain an autopsy was prejudicial to the defendants because it hindered their ability to defend against the claim that Mr. Kilpatrick suffered from an asbestos-related disease. Based on this memorandum decision, the court dismissed Defendant BNSF. In September, also relying on the memorandum decision, the court filed a minute entry granting Defendant Bullough Abatement, Inc.'s ("Bullough") motion to dismiss. Bullough was the last remaining defendant in Mrs. Kilpatrick's case. She filed a notice of appeal in September 2006.

## III. KIRKHAM

¶ 7 Marvin Kirkham and his wife Carolyn, filed their complaint in December 2005, alleging injuries and loss of consortium due to Marvin's alleged exposure to asbestos. Mr. Kirkham was diagnosed with mesothelioma in October 2005. During the course of litigation, Mr. Kirkham's health declined precipitously, and he passed away on May 13, 2006. In January 2006, both Mr. and Mrs. Kirkham had signed an authorization for their counsel to procure an autopsy following Mr.

Kirkham's death. Mrs. Kirkham stated in her affidavit that she was so distraught following Mr. Kirkham's death that she forgot about the autopsy requirement and failed to notify her attorneys of Mr. Kirkham's death until after he was buried. As a result, no autopsy was performed. Following Mr. Kirkham's death, Mrs. Kirkham filed a motion to substitute herself as the named plaintiff. Defendant Hamilton Materials, Inc., joined by several other defendants, filed a motion to dismiss for failure to comply with the autopsy requirement. In a January 2007 minute entry, the court dismissed Mrs. Kirkham's claims as a sanction for her failure to procure an autopsy. Mrs. Kirkham filed her notice of appeal in February 2007.

¶ 8 These cases were consolidated for appeal. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(j) (Supp.2008).

## ANALYSIS

### I. JURISDICTION OVER THE BNSF DISMISSAL IN THE KILPATRICK CASE

¶ 9 The first issue is whether we have jurisdiction over Mrs. Kilpatrick's appeal of the order dismissing her claims against BNSF. After the district court entered its memorandum decision and its order dismissing BNSF, Mrs. Kilpatrick moved to certify the BNSF dismissal under rule 54(b) of the Utah Rules of Civil Procedure. BNSF did not oppose the motion, and the district court certified the decision in June 2006. The district court's order stated in its entirety, "Plaintiff's unopposed motion to enter final judgment as to [BNSF] and to certify matter as ready for appeal is granted. Plaintiff's counsel is directed to prepare the appropri-

ate order." (Emphasis removed.) Mrs. Kilpatrick's counsel never prepared the order.

¶ 10 Three months later, the district court dismissed Bullough, the final defendant in the Kilpatrick case. The court's minute order relied on the reasons set forth in the memorandum decision dismissing BNSF and designated the dismissal as a final order. The minute entry clarified that "[n]o further order [was] required." Mrs. Kilpatrick filed a notice of appeal five days later. Her notice of appeal indicated that she was appealing the "Order Granting Defendant's Motion to Dismiss which extinguished all claims against Bullough Abatement, Inc." Although the notice of appeal referenced the court's decision regarding BNSF, the notice did not explicitly state that Mrs. Kilpatrick intended to appeal the dismissal of BNSF.[2]

¶ 11 BNSF argues that we do not have jurisdiction over the appeal because it was untimely and because the notice did not indicate an intent to appeal the dismissal of BNSF. " 'Whether appellate jurisdiction exists is a question of law which we review for correctness, giving no deference to the decision below.' "[3]

### A. The Appeal Against BNSF Was Not Untimely Because the District Court's Minute Entry Granting Certification Was Never Entered as an Order in Compliance with Rule 7(f)

¶ 12 Rule 7(f)(2) of the Utah Rules of Civil Procedure states that "unless otherwise directed by the court, the prevailing party shall, within fifteen days after the court's decision, serve upon the other parties a proposed order in conformity with the

---

2. The Notice of Appeal read in its entirety as follows:

> Plaintiffs, MARGARET KILPATRICK and heirs, hereby appeal from the Order Granting Defendant's Motion to Dismiss which extinguished all claims against Bullough Abatement, Inc. ("Bullough") with prejudice. The Court's Order was entered September 21, 2006, and provided that Plaintiffs' failure to perform an autopsy was fatal to the causes of action against Bullough. The Court relied on its decision with regard to Defendant Burlington Northern and Santa Fe Railway Company ("BNRR"), in which it found that a full autop-

sy was required pursuant to Case Management Order no. 1, and that the destruction of Mr. Kilpatrick's body was prejudicial to Defendant.

The Court's September 21, 2006 Decision provides that "this Minute Entry constitutes the Order regarding the matters addressed herein. No further Order is required." As such, this matter is now ripe for appeal.

Dated this 25th day of September, 2006.

3. *Code v. Utah Dep't of Health*, 2007 UT 43, ¶ 3, 162 P.3d 1097 (quoting *Pledger v. Gillespie*, 1999 UT 54, ¶ 16, 982 P.2d 572).

court's decision." In *Code v. Utah Department of Health*, we clarified that the time for appeal begins to run with the entry of the prepared order, unless the court either approves a proposed order submitted with the initial memorandum or explicitly directs that no order is required.[4] Thus, the minute entry or the memorandum decision alone does not trigger the time for appeal.[5] If the prevailing party fails to enter an order within the fifteen-day period prescribed by rule 7(f)(2), the time for appeal does not begin to run. In such a case, "any party interested in finality … may submit an order."[6] Thus, if BNSF had desired finality, it could have submitted the necessary order. In its absence, however, no finality is ascribed to the court's minute entry.[7] Because the final order was never prepared in compliance with rule 7(f)(2), the order never became final; thus, the time for appeal did not begin to run until the district court's final order dismissing Bullough, the final defendant in the case.

### B. Mrs. Kilpatrick's Notice of Appeal Sufficiently Conveyed Her Intent to Appeal BNSF's Dismissal

¶ 13 BNSF also argues that Mrs. Kilpatrick did not perfect her appeal of the BNSF dismissal because she did not explicitly state that she intended to appeal the court's minute entry dismissing BNSF. We hold that Mrs. Kilpatrick did perfect her appeal because her notice of appeal sufficiently indicated her intent to appeal the dismissal of BNSF and because BNSF was not prejudiced.

¶ 14 The purpose of the notification requirement "is to advise the opposite party that an appeal has been taken from a specific judgment in a particular case … [because the opposing party] is entitled to know specifically which judgment is being appealed."[8] Rule 3(d) of the Utah Rules of Appellate Procedure requires that the notice of appeal specify the "parties taking the appeal;" the "judgment or order, or part thereof, appealed from;" the court from which the appeal is taken; and the court to which the appeal is directed. In determining whether the notification requirement has been met, we have "long adhered to the policy that where the notice of appeal sufficiently identifies the final judgment at issue and the opposing party is not prejudiced, the notice of appeal is to be liberally construed."[9]

¶ 15 Where the appealing party's intent is clear and the appellee suffers no prejudice, the notice of appeal is sufficient. For example, in *Hardinger v. Scott (State ex rel. B.B.)*, the appellant did not identify the orders appealed from by name.[10] We reasoned that although "the notice of appeal was not a model of clarity, it adequately notified the [appellees] of the issues to be reviewed."[11] Moreover, the appellees did not claim that they were misled or in anyway prejudiced by the failure to list the orders separately.[12] Similarly, in *Speros v. Fricke*, we held that a notice in which the appellant used an incorrect date in reference to the final order was sufficient.[13] We reasoned that the order appellant intended to appeal was evident in context and that no prejudice occurred as a result of the error.[14]

---

4. 2007 UT 43, ¶ 5, 162 P.3d 1097.

5. *See id.* ¶ 9 ("[U]nless a court explicitly directs that no order needs to be submitted, no finality will be ascribed for a memorandum decision or minute entry for purposes of triggering the running of the time for appeal.").

6. *Id.* ¶ 7.

7. *Id.* ¶ 9.

8. *Jensen v. Intermountain Power Agency*, 1999 UT 10, ¶ 7, 977 P.2d 474.

9. *Hardinger v. Scott (State ex rel. B.B.)*, 2004 UT 39, ¶ 10, 94 P.3d 252.

10. *Id.* ¶ 11.

11. *Id.*

12. *Id.*

13. 2004 UT 69, ¶ 15, 98 P.3d 28.

14. *Id.* ¶¶ 15–16 & n. 2; *see also Price v. W. Loan & Sav. Co.*, 35 Utah 379, 100 P. 677, 679 (1909) (allowing appeal to proceed, even though the notification *improperly* referred to the order appealed from, because the notification sufficiently identified the final judgment at issue and because the appellee was not prejudiced by the failure).

¶ 16 In this case, Mrs. Kilpatrick's intent was clear and BNSF has not argued that it was prejudiced by her failure to explicitly reference BNSF in the notice. In context, Mrs. Kilpatrick's notice of appeal provided sufficient notification of her intent to appeal the dismissal of BNSF for four reasons. First, it would be worthless to appeal the Bullough dismissal without appealing the BNSF dismissal because the district court relied on the memorandum decision dismissing BNSF to dismiss Bullough. Second, Mrs. Kilpatrick served BNSF with her notice of appeal in accordance with rule 3(e), which "requires that all parties to the judgment or order being appealed be served a copy of the notice of appeal." [15] If Mrs. Kilpatrick did not intend to appeal the dismissal of BNSF, there would be no reason for her to serve her notice of appeal on BNSF. Third, Mrs. Kilpatrick referenced the BNSF memorandum decision in her notice of appeal. Finally, BNSF has not shown any way in which it was prejudiced by Mrs. Kilpatrick's omission.[16] We therefore reject BNSF's claim that Mrs. Kilpatrick did not perfect her appeal.

## II. DOES THE DISTRICT COURT HAVE AUTHORITY TO REQUIRE AN AUTOPSY IN EVERY ASBESTOS–RELATED CASE?

¶ 17 Mrs. Kirkham and Mrs. Kilpatrick challenge the district court's authority to enforce the autopsy requirement. Bullough and BNSF argue that the challenge to the autopsy requirement is untimely because it was not preserved in district court and because Brayton Purcell waived the right to challenge the CMO by participating in its creation and by endorsing the CMO in its entirety in other communications with the court.

¶ 18 We will not address the argument that the district court did not have authority to enforce the autopsy requirement because it was not raised before the district court. "Any challenge to the merits of a discovery request must be timely filed and put before the trial court, or the claim will be waived." [17]

¶ 19 Plaintiffs have not provided any record citations to support their assertion that they challenged the autopsy requirement before the district court. In contrast, defendants have pointed out several occasions when Brayton Purcell urged the district court *not* to approve amendments to the CMO because amendments would upset the negotiated compromises agreed to by the parties. For example, in a February 14, 2003 memorandum in opposition to a motion to amend the CMO, Brayton Purcell referenced the autopsy provision and explicitly requested that the court not change it. Brayton Purcell concluded the memo by explaining that "it is the plaintiffs' position that the CMO and its amendments have been exhaustively discussed. As part of these discussions there has been much give-and-take and compromise.... [I]t was felt that without such compromises, there would be no case management order...."

¶ 20 Rule 24(a)(5)(A) of the Utah Rules of Appellate Procedure requires that parties demonstrate preservation of an issue by providing a citation to the record showing that the issue was presented to the district court. Rule 24(a)(7) requires that "[a]ll statements of fact and references to the proceedings below shall be supported by citations to the record." We have made it clear that "[t]his court need not, and will not, consider any facts not properly cited to, or supported by, the record." [18] Nor will we

---

**15.** *Scudder v. Kennecott Copper Corp.*, 886 P.2d 48, 50 (Utah 1994); Utah R.App. P. 3(e).

**16.** *Cf. Jensen v. Intermountain Power Agency*, 1999 UT 10, ¶¶ 8–9, 977 P.2d 474 (finding that the rule 3 notification requirement was not met where the notice of appeal did not indicate an intent to appeal an earlier summary judgment decision and where the appellee was prejudiced because the late notification of the appeal limited the time available for filing cross-appeal).

**17.** *Tuck v. Godfrey*, 1999 UT App 127, ¶ 28, 981 P.2d 407.

**18.** *Uckerman v. Lincoln Nat'l Life Ins. Co.*, 588 P.2d 142, 144 (Utah 1978); *see also Koulis v. Standard Oil Co. of Cal.*, 746 P.2d 1182, 1184 (Utah Ct.App.1987) ("If a party fails to make a concise statement of the facts and citation of the pages in the record where those facts are supported, the court will assume the correctness of the judgment below.").

entertain issues raised for the first time on appeal absent exceptional circumstances.[19] Because the plaintiffs either failed to challenge the autopsy provision before the district court, or failed to provide to this court a record citation to their challenge, we will not address their argument.

## III. THE DISTRICT COURT ABUSED ITS DISCRETION BY DISMISSING THE CASES FOR FAILURE TO COMPLY WITH THE AUTOPSY REQUIREMENT

¶ 21 Mrs. Kirkham and Mrs. Kilpatrick both argue that the district court abused its discretion by dismissing their claims as a sanction for their failures to obtain autopsies following their husbands' deaths absent evidence of willfulness, bad faith, or fault. On the other hand, defendants argue that the district court had "broad discretion" to dismiss and that the decision should only be overturned if "abuse of discretion [is] *clearly* shown" or there is "no evidentiary basis for the trial court's ruling."[20]

¶ 22 Rule 37(b)(2) of the Utah Rules of Civil Procedure authorizes the district court to sanction a party who "fails to obey an order" of the court during discovery "unless the court finds that the failure was substantially justified." The court may take any action that is "just," including onerous sanctions such as dismissing the action or rendering judgment by default against the disobedient party.[21]

 ¶ 23 Our review of a district court's imposition of sanctions follows a two-step process. First, we ensure that the dis-trict court has made a factual finding that the party's behavior merits sanctions. Second, once the factual finding has been made, we will only disturb the sanction if "abuse of discretion [is] *clearly* shown."[22] As a general rule, district courts are granted a great deal of deference in selecting discovery sanctions, and we overturn a sanction only in cases evidencing a clear abuse of discretion.[23] An abuse of discretion may be demonstrated by showing that the district court relied on "an erroneous conclusion of law" or that there was "no evidentiary basis for the trial court's ruling."[24] Our deferential review recognizes that "trial courts must deal first hand with the parties and the discovery process."[25]

¶ 24 We hold that the district court's order was an abuse of discretion because it lacked an evidentiary basis. It was improper for the district court to dismiss the plaintiffs' claims absent a factual finding that plaintiffs' failures to procure the autopsies were willful. The willfulness requirement cannot be satisfied by showing mere prejudice. Rather, there must be evidence that the noncompliance was the product of willful failure.

### A. The District Court's Dismissal Lacked an Evidentiary Basis Because the District Court Made No Factual Findings as to Willfulness, Bad Faith, or Fault

 ¶ 25 Sanctions are warranted when "(1) the party's behavior was willful; (2) the party has acted in bad faith; (3) the court can attribute some fault to the party; or (4) the party has engaged in persistent dilatory tactics tending to frustrate the judicial process."[26]

**19.** *State v. Pinder*, 2005 UT 15, ¶ 45, 114 P.3d 551 ("Under ordinary circumstances, we will not consider an issue brought for the first time on appeal unless the trial court committed plain error or exceptional circumstances exist." (internal quotation marks omitted)).

**20.** *Morton v. Cont'l Baking Co.*, 938 P.2d 271, 274 (Utah 1997) (alteration in original) (internal quotation marks omitted).

**21.** Utah R. Civ. P. 37(b)(2)(C).

**22.** *Morton*, 938 P.2d at 274 (alteration in original) (internal quotation marks omitted).

**23.** *First Fed. Sav. & Loan Ass'n of Salt Lake City v. Schamanek*, 684 P.2d 1257, 1266 (Utah 1984) ("The choice of an appropriate discovery sanction is primarily the responsibility of the trial judge and will not be reversed absent an abuse of discretion.").

**24.** *Morton*, 938 P.2d at 274 (internal quotation marks omitted).

**25.** *Utah Dep't of Transp. v. Osguthorpe*, 892 P.2d 4, 6 (Utah 1995) (internal quotation marks omitted).

**26.** *Morton*, 938 P.2d at 276.

¶ 26 In this case, the district court did not make the threshold factual finding as to whether plaintiffs' failures to procure autopsies were the result of willfulness, bad faith, fault or persistent dilatory tactics on the part of Mrs. Kilpatrick and Mrs. Kirkham.

¶ 27 In the Kilpatrick case, the district court implied fault simply because the CMO required an autopsy, Mrs. Kilpatrick failed to procure one, and her failure prejudiced defendants. This reasoning is illustrated by one of the trial judge's comments at the hearing: "I think I have an understanding of the issues. It's not complicated. CMO said autopsy. There was no autopsy, motion to dismiss. Is that your motion?" In dismissing Bullough, the district court did not make any factual inquiry into the willfulness of Mrs. Kilpatrick's failure. Notably, there is unchallenged evidence that Mrs. Kilpatrick's failure may not have been willful because when she cremated Mr. Kilpatrick, she was unaware of either the autopsy requirement or the fact that Mr. Kilpatrick had signed an agreement to have an autopsy performed. Her affidavit states, "I was unaware that James signed an authorization consenting to an autopsy. He did not inform me of his wish to have an autopsy."

¶ 28 Similarly, in Mrs. Kirkham's case, the district court's minute entry made no finding of willfulness, bad faith, fault or dilatory tactics. The district court merely said that "[a]fter reviewing the record in this matter, the Court is persuaded [that] dismissal of this action for failure to comply with the autopsy requirement is appropriate." The only evidence in the record, however, is Mrs. Kirkham's affidavit, in which she testifies that her failure to procure an autopsy was inadvertent, not willful. Her affidavit states, "The failure to perform an autopsy . . . was not due to any purposeful violation of the agreement with our attorneys, but instead was the result of the fact that our family was grieving and was ill-prepared for [Mr. Kirk-

ham's] sudden death." She explained that Mr. Kirkham's "illness progressed extremely rapidly, and the expediency of his death took our family by surprise." She also explained that "[a]lthough I had authorized an autopsy four months prior, at the time of my husband's death, I was very distraught and did not recall the agreement until after he was buried."

¶ 29 A failure to make factual findings regarding willfulness is not always grounds for reversal. In *Amica Mutual Insurance Co. v. Schettler,* the court of appeals held that the district court's failure to make a specific finding of willfulness, bad faith, or fault "is not grounds for reversal if 'a full understanding of the issues on appeal can nevertheless be determined by the appellate court.' " [27] In *Schettler,* the court of appeals upheld the district court's dismissal of a case despite the absence of a finding of willfulness where the record "clearly demonstrate[d] a pattern of aggravated misconduct in the form of willful and deliberate disobedience of discovery orders, fabricated testimony, and attempted witness tampering." [28]

¶ 30 In contrast, the record in this case does not demonstrate willful disobedience of the CMO. The district court's opinion is devoid of any discussion demonstrating either a pattern of misconduct or any willful or deliberate disobedience of the court's discovery orders.

### B. The Fault Requirement Cannot Be Satisfied by Mere Noncompliance Absent Any Additional Evidence of Willful Behavior

¶ 31 "[T]here are constitutional limitations upon the power of the courts . . . to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause." [29] The Supreme Court has held that rule 37 of the Federal Rules of Civil Procedure "should not be construed to authorize dismissal . . . when it has been established that failure to comply has been due to

---

**27.** 768 P.2d 950, 962 (Utah Ct.App.1989) (quoting *Texas Extrusion Corp. v. Palmer, Palmer & Coffee,* 836 F.2d 217, 221 (5th Cir.1988)).

**28.** *Id.*

**29.** *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 209, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958).

inability, and not to willfulness, bad faith, or any fault of petitioner." [30]

¶ 32 Defendants focus on the language in our cases stating that sanctions will be upheld on a showing of "willfulness, bad faith, *or fault,* or persistent dilatory tactics" [31] and argue that failure to obtain an autopsy demonstrates fault. We reject this strict liability approach.

¶ 33 The strict liability interpretation of "fault" ignores the principle that a general term included within a list of more specific terms should be given a meaning that is analogous to the other terms within the list.[32] In this list, willfulness, bad faith, and persistent dilatory tactics all involve intentional behavior. Thus, the meaning of "fault" should not be interpreted to include unintentional behavior.

¶ 34 This approach is consistent with case law that requires intentional behavior in order to satisfy the fault requirement when the sanction imposed is dismissal or a default judgment. As the Tenth Circuit has explained, "Because a default judgment is a harsh sanction, due process requires that failure is a sufficient ground only when it is the result of willfulness, bad faith, or [some] fault of petitioner rather than inability to comply." [33] While this standard does not require wrongful intent, "willful failure" is " 'any intentional failure as distinguished from involuntary noncompliance.' " [34]

¶ 35 In cases meriting sanctions, there is often a consistent pattern of behavior disregarding discovery requirements or court orders, as well as evidence that the sanctioned party is on notice that its pattern of behavior will result in sanctions if it continues. For example, in *Osguthorpe,* the district court found that Osguthorpe had received "numerous notices, motions, and orders" from the court and the opposing party during sixteen months of delay.[35] Moreover, Osguthorpe was on notice that this pattern would result in sanctions because he had received, and failed to respond to, a motion to compel and a motion to enter default as a discovery sanction.[36] In *Schettler,* the district court explained that the record "clearly demonstrates a pattern of aggravated misconduct in the form of willful and deliberate disobedience of discovery orders, fabricated testimony, and witness tampering." [37] Moreover, the opposing party had filed a motion for sanctions for client and attorney misconduct and a motion to compel, and the court had entered an order—to which Schettler did not respond—requesting a more thorough response to the motions.[38] In *Schamanek,* the sanctioned party refused to respond to requests for admission, refused to produce documents, refused to answer deposition questions, and continued this pattern of refusal after the court entered an order compelling discovery.[39] In *Hales v. Oldroyd,* over the course of about three and one-half years, the sanctioned party failed to respond to two sets of interrogatories for several months, failed to return medical release forms, failed to respond to two separate motions to compel, failed to respond to an order to compel and sanctions for the costs of the motions to compel, and failed to respond to a motion to

---

30. *Id.* at 212, 78 S.Ct. 1087.

31. *Morton,* 938 P.2d at 274 (emphasis added) (citations and internal quotation marks omitted).

32. *See, e.g., Nephi City v. Hansen,* 779 P.2d 673, 675 (Utah 1989) ("But where general terms follow specific ones, the rules of construction, including *noscitur a sociis,* 'it is known from its associates,' and *ejusdem generis,* 'of the same kind,' require that the general terms be given a meaning that is restricted to a sense analogous to the preceding specific terms.").

33. *M.E.N. Co. v. Control Fluidics, Inc.,* 834 F.2d 869, 872 (10th Cir.1987) (alteration in original) (internal quotation marks omitted).

34. *Osguthorpe,* 892 P.2d at 8 (quoting *Schettler,* 768 P.2d at 961).

35. *Id.* at 7.

36. *Id.* at 8.

37. 768 P.2d at 962.

38. *Id.* at 954–55.

39. 684 P.2d at 1261.

dismiss as a discovery sanction.[40] In *Morton*, the sanctioned party requested continuances twice, thereby delaying the trial for a year, failed to respond to interrogatories, failed to respond to a motion to compel or face dismissal, and failed to provide a timely response to a court order threatening dismissal if no response was received by a certain date.[41] In *Marshall v. Marshall*, the plaintiff listed thirteen instances of the defendant's failure to provide discovery documents, as well as other instances where the defendant failed to comply with court discovery orders, such as hiding $180,000 from the court over the course of two years, while claiming that he could not afford alimony and child support payments.[42] The defendant was on notice that this behavior could result in default because the plaintiff submitted two motions, six months apart, requesting that he be defaulted.[43]

¶ 36 Finally, our case law resists sanctioning a party whose noncompliance is due to someone else's failure. For example, in *Depew v. Sullivan*, a client failed to provide tax returns in satisfaction of a discovery request despite a court order compelling a response.[44] The district court ordered sanctions against the client and the attorney. The court of appeals remanded the sanctions against the attorney for a factual finding as to whether the attorney was actually to blame for the discovery violation.[45] The court of appeals explained, "We believe that [a sanction] is unjust when it is imposed against a person who had absolutely no fault for the discovery violation at issue...."[46]

¶ 37 Similarly, in *M.E.N. Co.*, the federal district court dismissed the case under rule 37 of the Federal Rules of Civil Procedure.[47] The defendants-appellants had failed to provide discovery or appear for noticed depositions, failed to obey a court order to appear for depositions, failed to file a pretrial memorandum, and failed to pay sanctions to the other party.[48] The defendants-appellants challenged the dismissal of their case by blaming their attorneys for the failure, arguing that their attorneys never notified them of their discovery obligations. The Tenth Circuit confirmed that the clients' knowledge was integral to imposing sanctions by remanding for factual findings as to whether the clients knew about their discovery obligations in order to determine whether their conduct satisfied the "willful noncompliance standard."[49]

¶ 38 The willfulness requirement gives us particular concern in this case, where plaintiffs' failures to comply with the CMO may have been the result of inadequate communication between plaintiffs' attorneys and their clients. The circumstances surrounding an autopsy differ substantially from the circumstances surrounding a failure to produce tax returns or attend a deposition. In the Kilpatrick case, the party who signed the autopsy agreement was dead and incapable of reminding his survivors about the agreement. In Mrs. Kirkham's case, her affidavit states that the surprise and grief accompanying her husband's death caused her to forget about obtaining an autopsy. While we do not suggest that bereavement is an excuse for failure to comply with court orders, it would be unjust to ignore the reality of grief and surprise in determining whether the failure to procure an autopsy was willful. Careful counsel would be sure to avoid this situation by preparing their clients for this event— underscoring and frequently reminding their clients about the importance of an autopsy upon the death of the plaintiff. This is particularly true in the case of a firm like Brayton Purcel, which holds itself out as an expert in asbestos litigation.[50]

¶ 39 We are not blind to the conceptual tension presented by application of

---

**40.** 2000 UT App 75, ¶ 3, 999 P.2d 588.

**41.** 938 P.2d at 272–73.

**42.** 915 P.2d 508, 512, 515 (Utah Ct.App.1996).

**43.** *Id.* at 511–12.

**44.** 2003 UT App 152, ¶¶ 36–37, 71 P.3d 601.

**45.** *Id.* ¶ 37 n. 14.

**46.** *Id.*

**47.** 834 F.2d at 870.

**48.** *Id.*

**49.** *Id.* at 873.

**50.** Counsel's performance before this court, however, makes us wonder whether such communication occurred. On the morning of oral argu-

the willful noncompliance standard in this case. We recognize that "a party voluntarily chooses [his or] her attorney and therefore is generally bound by the acts or omissions of his or her attorney." [51] But, where discovery sanctions are concerned, "if the fault lies with the attorneys, that is where the impact of the sanction should be lodged." [52] Moreover, even in the absence of a direct sanction against a client, the truth of the matter is that an attorney's failure will typically impact the client.[53] For example, even in cases where the failure to procure an autopsy is inadvertent, the only fair way to address the missing evidence is to direct the fact-finder that the defendants are entitled to a favorable inference in place of the missing evidence.[54] This remedy will serve the dual purpose of mitigating any prejudice experienced by the defendants and providing a sufficient deterrent to others who may be tempted to purposely destroy important evidence.[55] Indeed, in some cases, an unfavorable inference may, as a practical matter, preclude the plaintiff from pursuing his claims against the defendants.

¶ 40 In summary, while the plaintiffs may have to live with the consequences of their attorneys' failures, the trial court erred in dismissing plaintiffs' claims as a sanction for their failures to obtain autopsies, absent a factual determination that the failures were due to willful, rather than unintentional, non-compliance with the CMO.

## IV. DID THE DISTRICT COURT WRONGFULLY DEPRIVE MR. KILPATRICK'S HEIRS OF THEIR CONSTITUTIONAL RIGHT TO A WRONGFUL DEATH SUIT?

¶ 41 Finally, the parties disagree as to whether the district court's dismissal of Mrs. Kilpatrick's claims could preclude Mr. Kilpatrick's heirs from bringing a wrongful death claim. Because we reverse, we do not reach this issue.

## CONCLUSION

¶ 42 In conclusion, we have jurisdiction over the Kilpatrick case because the notice of appeal was timely and it sufficiently conveyed an intent to appeal the dismissal of BNSF. We reverse the dismissal of both the Kilpatrick and the Kirkham cases.

¶ 43 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Judge ORME concur with Justice PARRISH'S opinion.

¶ 44 Justice NEHRING does not participate herein; Court of Appeals Judge GREGORY K. ORME sat.

---

ment, counsel did not arrive. Despite several phone calls from the court to counsel's office, we did not receive an explanation for the failure to appear until two days later, when we received a letter referencing the wrong case number and assuring "this Honorable Court that [the] non-appearance was an honest mistake" that should be blamed on a "recently hired paralegal" for failing to schedule the hearing on the correct calendar. Moreover, the apology was not signed by any of the lawyers whose names appeared on the briefs.

51. *Menzies v. Galetka*, 2006 UT 81, ¶ 76, 150 P.3d 480; *see also Peters v. Pine Meadow Ranch Home Ass'n*, 2007 UT 2, ¶ 1, 151 P.3d 962 (striking briefs for counsel's unfounded accusations of judicial impropriety and declining to reach the merits on certiorari review as sanction for counsel's misconduct).

52. *M.E.N. Co.*, 834 F.2d at 873 (internal quotation marks omitted).

53. *See Peters*, 2007 UT 2, ¶ 20, 151 P.3d 962 (acknowledging that "the egregiousness of counsel's conduct has led to sanctions that have directly caused a detrimental result for his clients" and recognizing that even in cases where sanctions are not imposed, unprofessionalism "often will nevertheless diminish [a lawyer's] effectiveness").

54. *Societe Internationale*, 357 U.S. at 212–13, 78 S.Ct. 1087 (acknowledging that in the absence of complete discovery, the district court would be justified in drawing unfavorable inferences as to the missing evidence).

55. *See Nat'l Hockey League v. Metro. Hockey Club Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) ("[S]anctions ... must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.").