2019 UT App 183

# THE UTAH COURT OF APPEALS

RAASS BROTHERS INC.,
Appellant,
*v.*
SUMMER RAASS AND J&M RENTALS LLC,
Appellees.

Opinion
No. 20180356-CA
Filed November 15, 2019

Fourth District Court, Provo Department
The Honorable Kraig Powell
No. 170401107

Brinton M. Wilkins, Attorney for Appellant

Elaina M. Maragakis and Aaron C. Hinton,
Attorneys for Appellees

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES GREGORY K. ORME and KATE APPLEBY concurred.

HARRIS, Judge:

¶1 After months of frustrating and futile attempts to obtain complete responses to discovery requests, Summer Raass and J&M Rentals LLC (often collectively referred to herein as Summer[1]) filed a motion asking the district court to sanction Raass Brothers Inc. (RBI). The district court held a three-day evidentiary hearing on Summer's motion, followed by a full day of oral argument, and concluded that RBI had acted

---

1. "As is our practice in cases where [relevant individuals] share a last name, we refer to the parties by their first name with no disrespect intended by the apparent informality." *Smith v. Smith*, 2017 UT App 40, ¶ 2 n.1, 392 P.3d 985.

inappropriately, and that, as a sanction, it should pay Summer the attorney fees she incurred in bringing the sanctions motion and participating in the evidentiary hearing. Shortly thereafter, following additional litigation over the appropriate amount, the district court determined that Summer had reasonably incurred $235,286.73 in attorney fees and costs related to the motion and hearing. RBI appeals, asserting that the district court abused its discretion by concluding that RBI's behavior warranted sanction and in its calculation of "reasonable" attorney fees. We affirm.

BACKGROUND

¶2    RBI is a construction business that, prior to late 2015, was jointly owned and operated by Summer's then-husband Stan Raass and his brother John. In August 2015, Summer filed for divorce. Shortly thereafter, Stan confessed to John that he and Summer had been embezzling RBI's corporate funds for personal use. Following Stan's confession, John and RBI entered into an agreement with Stan whereunder Stan agreed, among other things, to surrender his ownership interest in the company, and RBI agreed not to sue Stan. However, the agreement did not preclude further action against Summer, and in October 2015 RBI sued Summer, stating claims for theft and conversion and alleging that Summer "misappropriated funds from RBI for her personal use."

¶3    After responding to RBI's complaint, Summer served RBI with multiple written discovery requests, and sent separate subpoenas to Stan and RBI's office manager (Manager). Among other things, Summer asked RBI to "[p]roduce all documents in [RBI's] possession, custody, or control" showing the following: "gross receipts" (Request 3); "financial statements, balance sheets, income statements, tax filings, and loan applications" (Request 8); "documents . . . showing compensation, draws, distributions, expenditures or bonuses made to . . . any of the

officers, directors or shareholders of RBI" (Request 9); and contracts "to provide labor or services" to "any federal, state, or local government" (Request 10).

¶4 Following these requests, Summer became aware that RBI was required to submit certain forms (SBA Forms) to the federal Small Business Association each year, the content of which was at least partially responsive to Requests 3, 8, and 9. In addition, Summer was dissatisfied with RBI's production of its job files related to TKL Construction (TKL Job Files), which files Summer believed contained information responsive to Requests 3 and 10. In an attempt to obtain RBI's SBA Forms as well as complete TKL Job Files, Summer engaged in substantial meet-and-confer efforts with RBI, including five separate communications (two face-to-face and three written). Even after meeting and conferring, however, Summer's concerns were not assuaged.

¶5 Summer then submitted two statements of discovery issues (SDIs) to the district court, seeking an order compelling RBI to produce copies of all of its SBA Forms and all of the TKL Job Files. The district court made a ruling favorable to Summer on her SDIs, entering a written order to that effect on March 1, 2017 (March 1 Order). The March 1 Order provided that, within thirty days, RBI must "fully comply with Requests 3, 8, and 9" of Summer's requests for production of documents, "including by producing copies of all [SBA Forms] . . . in [its] possession, custody or control, regardless of the current location or the form or medium in which they are stored." In addition, the court ordered that RBI must "fully comply with Requests 3 and 10," "including by producing complete copies of all TKL job files in its possession, custody or control."

¶6 A few weeks later, RBI certified that it had complied with the March 1 Order. Summer disagreed with that characterization, however, and filed a motion for sanctions, pursuant to rule 37(b) of the Utah Rules of Civil Procedure,

alleging that RBI had failed to comply with the March 1 Order. Summer also asked the court to schedule an evidentiary hearing on the issue, and the court granted that request.

¶7    Although the hearing was originally scheduled for just one day, the parties were unable to fully present their evidence in that time span, and the court ended up taking three full days to hear from the parties' witnesses. After the hearing, the court asked the parties to provide supplemental briefing, and after considering that briefing, the court entertained a full day of oral argument on the motion for sanctions.

¶8    About a week after oral argument, the district court issued an eleven-page written ruling (Sanctions Order) granting Summer's motion. Among other findings, the court determined that RBI "failed to provide" to Summer documents that it had been ordered to produce, including "all [TKL] job files," "profit allocation information," "budget variance sheets," and SBA Forms. It also concluded that the SBA Forms "filed by RBI and currently kept by the Small Business Administration are within the custody or control of RBI and must be procured and produced by RBI." In addition, the court found that RBI was "at fault for failing to properly comply with [its] discovery obligations," and that it had "engaged in persistent dilatory tactics." While the court declined Summer's invitation to impose more severe sanctions (for instance, dismissing RBI's lawsuit), it held RBI, Stan, and Manager in contempt of court, and ordered them to produce a number of specific documents, including all TKL Job Files and SBA Forms, within sixty days. In addition, it ordered RBI "to pay all costs and attorney fees incurred by [Summer] in prosecuting" the motion for sanctions, "obtaining the discovery items referenced" in the Sanctions Order, and "securing full compliance with this order."

¶9    Soon after the court issued its ruling, Summer filed affidavits regarding attorney fees and costs, requesting that the

court order RBI to pay Summer a total of $343,590.12. RBI objected, asserting that the amount of fees requested was unreasonable. In particular, RBI argued that Summer should not be able to recover any fees incurred prior to March 17, 2017, the first date on which work relating to the motion for sanctions began. Moreover, it argued that Summer's attorneys often had two attorneys perform work that could have been handled by just one, and asserted that certain billing entries included in the request were unrelated to the motion for sanctions or were unduly vague. After reviewing Summer's fee affidavit and RBI's objection, the court agreed with many of RBI's arguments, and awarded Summer an amount of fees and costs—$235,286.73—that was more than 30% less than what had been requested.

¶10　In response to the Sanctions Order, RBI produced to Summer "114 gigabytes" of electronic documents. Summer claims that, because of time and financial constraints associated with sifting through such a large amount of data, she was unable to complete a comprehensive review of the newly-produced information,[2] but asserts that even a limited review of the documents uncovered "valuable information relevant to" her defenses, including "evidence of what [she] believed existed all along: an alternative set of accounting books." In addition, at oral argument before this court, Summer represented that the post-Sanctions Order production included at least one TKL Job File that had not been previously produced.

---

2. In fact, Summer filed a second motion for sanctions on this ground, arguing that RBI had overcorrected, and instead of producing too few documents, it was now producing too many. The district court denied Summer's second motion, concluding that RBI's conduct was not egregious enough to justify additional sanctions.

ISSUES AND STANDARDS OF REVIEW

¶11 RBI now appeals, and asks us to consider two issues. First, RBI contends that the district court abused its discretion by entering sanctions against it for discovery violations. An appellate court's "review of a district court's imposition of sanctions follows a two-step process." *Kilpatrick v. Bullough Abatement, Inc.*, 2008 UT 82, ¶ 23, 199 P.3d 957. First, we must "ensure that the district court has made a factual finding that the party's behavior merits sanctions," and we disturb such findings only if "there was no evidentiary basis for the [district] court's ruling." *Id.* Second, we review the district court's overall sanctions ruling for abuse of discretion, disturbing it only "if abuse of discretion is clearly shown." *Id.* (quotation simplified). Such abuse of discretion "may be demonstrated by showing that the district court relied on an erroneous conclusion of law or that there was no evidentiary basis for the [district] court's ruling." *Id.* (quotation simplified). In general, "district courts are granted a great deal of deference in selecting discovery sanctions," and this "deferential review recognizes that [district] courts must deal first hand with the parties and the discovery process." *Id.* (quotation simplified).

¶12 Second, RBI contends that the amount of fees and costs awarded by the district court is unreasonable. "Calculation of reasonable attorney fees is in the sound discretion of the [district] court and will not be overturned in the absence of a showing of a clear abuse of discretion." *Dixie State Bank v. Bracken*, 764 P.2d 985, 988 (Utah 1988) (quotation simplified).

ANALYSIS

I

¶13 RBI first challenges the district court's award of discovery sanctions, asserting that RBI's actions do not merit sanctions

because "RBI complied with its discovery obligations" and "RBI did not spoliate any evidence."

¶14 Summer's motion for sanctions invoked rule 37(b) of the Utah Rules of Civil Procedure. That rule confers on district courts the power to "impose appropriate sanctions for the failure to follow its [discovery] orders." Utah R. Civ. P. 37(b). Accordingly, the initial step in any sanctions proceeding that invokes rule 37(b) is to determine whether the party has in fact violated an order of the court. In this case, the specific order at issue is the March 1 Order, in which the district court made a ruling favorable to Summer on her two SDIs, and ordered RBI not only to "fully comply with" Requests 3, 8, 9, and 10, but also to produce all TKL Job Files and SBA Forms that were within its "possession, custody, or control."

¶15 After hearing evidence for three days, the district court concluded that RBI had indeed failed to comply with its March 1 Order. The court specifically found that RBI had failed to produce fourteen separate electronic TKL Job Files, as well as six hard-copy TKL Job Files, and that its production of many other TKL Job Files had been either incomplete or untimely. The court also found that RBI had produced only two (out of many) SBA Forms and had failed to request copies of those forms from the SBA. Additionally, the court found that RBI had made only a partial production of its bank statements, and had failed to produce any profit allocation statements or budget variance sheets. The court therefore made factual findings that RBI had violated its March 1 Order in numerous ways.

¶16 And we conclude that ample evidence supported these factual findings. With regard to the TKL Job Files, the March 1 Order did spur RBI to produce another eighty-four files—a substantial increase over the thirty-seven produced prior to the March 1 Order. But the district court found even this additional production to be incomplete, and that finding is supported by

evidence in the record. RBI's main defense on this point is that it produced all the TKL Job Files that it had, and that the rest of them were old and had been lost or destroyed. RBI maintains—correctly—that it is under no obligation to produce documents that no longer exist, *see, e.g., Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007) ("[A] party is not obliged to produce, at the risk of sanctions, documents that it does not possess or cannot obtain."), and that it cannot be sanctioned for failing to produce such documents absent a finding of spoliation, which finding the district court did not make. But the district court did not need to make a finding of spoliation in order to determine that RBI had failed to comply with its March 1 Order to produce the TKL Job Files. For instance, RBI produced an additional seventy-three files in June 2017, after the motion for sanctions had been filed, and well after the deadlines set forth in the March 1 Order. These documents clearly existed, but were produced after the deadline imposed by the court, and after Summer had gone to the expense of filing yet another motion to compel their production. Moreover, apparently at least one never-before-produced job file was finally handed over in early 2018, after entry of the Sanctions Order, lending additional support to the notion that unproduced TKL Job Files still exist. In light of the aforementioned evidence, the district court's determination that RBI violated the March 1 Order with regard to the TKL Job Files was supported by the record.

¶17 With regard to the SBA Forms, RBI produced one SBA Form within the deadline imposed by the court in the March 1 Order, but contends that it no longer possesses copies of any other of its SBA Forms. Moreover, RBI refused to request copies of those documents from the SBA, viewing that as Summer's responsibility. At one point during the discovery process, Summer made efforts to obtain copies of the forms directly from the SBA, but because the records were not hers, the SBA would give her only redacted copies; Summer was told that unredacted copies may be requested only by the owner of the records.

Under these circumstances, we agree with Summer that the unredacted SBA Forms are uniquely within RBI's control. *See* Utah R. Civ. P. 34(a)(1) (allowing litigants to request documents from opposing parties when those documents are within the opposing party's "possession or control"). Especially in today's world of cloud-based server storage, a party need not have a document in its actual physical possession in order for the document to be deemed within the party's control. *See Wilson v. Wright*, 30 P. 754, 755 (Utah Terr. 1892) ("If a party has the legal right to the possession of a document, in a legal sense it is within his control, though he may have left it with an agent or other person, from whom he has a right to receive it by demanding its possession."); *Tuck v. Godfrey*, 1999 UT App 127, ¶ 26 n.5, 981 P.2d 407 (recognizing that a party "had actual control of the [documents] in that he could, and did, direct [an individual] to find them"); *see also Shcherbakovskiy*, 490 F.3d at 138 (analyzing analogous federal rules, and stating that, where a responding party's documents reside with a third party, the responding party may be required to obtain them from the custodian, at least where the requesting party is unable as a practical matter to obtain them directly by subpoena); *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 636 (D. Minn. 2000) (stating that, under analogous federal rules, "documents are considered to be under a party's control when that party has the right, authority, or practical ability, to obtain the documents from a non-party to the action" (quotation simplified)). Because RBI was able to obtain unredacted copies of its own SBA Forms through a simple request, the unredacted forms were within RBI's control, and because Summer was unable to obtain unredacted copies of those documents through a third-party subpoena, RBI was required to obtain and produce them. It is undisputed that RBI did not do so, and therefore sufficient evidence supports the district court's finding regarding the SBA Forms.

¶18 And with regard to the other accounting and financial records discussed in the Sanctions Order, there is evidence that

RBI failed to produce existing documents within its possession and control that it had been ordered to produce pursuant to the March 1 Order. In that order, the court ordered RBI to fully comply with a number of Summer's discovery requests, which included the production of all accounting and financial records, including alternative accounting documents, profit allocation statements, and budget variance spreadsheets. Prior to entry of the March 1 Order, RBI produced what it maintains is "a full electronic copy of its QuickBooks records." However, based on evidence presented at trial, the court found that, "for a number of job files, there are numerous alternative and inconsistent versions of financial accountings" that had not been produced. This finding was clearly supported by record evidence. Among other things, the court heard testimony from Manager that, for a number of job files, RBI had generated multiple accountings, not all of which had been included in the initial production. This testimony was further corroborated by Summer's description of the documents produced in the "114 gigabytes" production after the Sanctions Order, which documents apparently included some alternative accounting documents that had not previously been produced. Moreover, the court's finding that RBI had failed to produce its profit allocation statements was based on Stan's deposition testimony that such documents existed and that he would provide them to Summer. Finally, the court's finding that RBI had failed to produce its budget variance spreadsheets was based on testimony from John and other RBI employees that "RBI had a longstanding practice of creating monthly" budget variance spreadsheets. Accordingly, the district court's factual finding that its March 1 Order had been violated was supported by competent evidence.

¶19    The second step in a rule 37(b) sanctions proceeding—after determining that an order of the court has been violated—is to determine whether the violation is severe enough to warrant the imposition of sanctions. Our supreme court has stated that, "[b]efore a [district] court can impose discovery sanctions under

rule 37," it must make a factual finding that the non-compliant party's actions fall into at least one of four categories: (1) willfulness, (2) bad faith, (3) fault, or (4) persistent dilatory tactics tending to frustrate the judicial process. *Morton v. Continental Baking Co.*, 938 P.2d 271, 274, 276 (Utah 1997). In this case, the district court made specific findings that RBI's behavior fell into categories (3) and (4); it found that "RBI, Stan, and [Manager] are all at fault for failing to properly comply with the discovery obligations regarding this case," that "RBI has engaged in persistent dilatory tactics tending to frustrate the judicial process," and that Stan and Manager, "[a]s agents of RBI," had also "engaged in persistent dilatory tactics tending to frustrate the judicial process."

¶20 These findings were also supported by competent evidence. The court noted that RBI had "made some attempts to comply with [its] discovery obligations," but that "those attempts were inadequate." It noted that RBI had failed to produce computers and flash drives that might have contained responsive documents, and that RBI had failed to produce bank statements and SBA Forms, even though those documents existed and were within RBI's possession or control. The court also emphasized that RBI produced documents in fits and starts, often in an untimely fashion, and often only after Summer filed SDIs or motions seeking to compel production. Under these circumstances, we cannot say that the court's findings that RBI was "at fault" for the incomplete and untimely production, and that RBI engaged in "persistent dilatory tactics," were clearly erroneous or unsupported by evidence in the record.

¶21 The final step in a rule 37(b) sanctions proceeding—once the court has found that a court order has been violated, and that the violation is sufficiently egregious to warrant sanctions—is for the court to select an appropriate sanction. In this situation, the court found that RBI's violations were sufficiently egregious to warrant an order compelling them to reimburse Summer for

the attorney fees and costs she incurred in bringing RBI into compliance with its discovery obligations. However, the court rejected Summer's request for more severe sanctions, concluding that "the conduct by RBI, Stan, and [Manager] . . . is not sufficiently willful or in bad faith as to warrant dismissal of RBI's claims as a sanction."

¶22    We accord broad deference to a district court's selection of an appropriate sanction, and we "will not disturb" its choice unless "abuse of discretion is clearly shown." *PC Crane Service, LLC v. McQueen Masonry, Inc.*, 2012 UT App 61, ¶ 7, 273 P.3d 396 (quotation simplified); *see also Kilpatrick v. Bullough Abatement, Inc.*, 2008 UT 82, ¶ 23, 199 P.3d 957 ("As a general rule, district courts are granted a great deal of deference in selecting discovery sanctions." (quotation simplified)); *Morton*, 938 P.2d at 274 ("Once the [district] court determines that sanctions are appropriate, the choice of an appropriate discovery sanction is primarily the responsibility of the trial judge." (quotation simplified)). "An abuse of discretion may be demonstrated by showing that the district court relied on an erroneous conclusion of law or that there was no evidentiary basis for the [district] court's ruling." *Kilpatrick*, 2008 UT 82, ¶ 23 (quotation simplified). On this record, we find no abuse of discretion in the court's choice of sanction. As noted, the court declined Summer's invitation to dismiss RBI's lawsuit as a sanction, and instead chose a lesser sanction that is entirely appropriate under the circumstances: when one party has to spend time, effort, and money to compel another party to comply with its discovery obligations, a district court may choose to order the non-compliant party to pay attorney fees to its litigation opponent.

¶23    In sum, the district court's factual findings—that RBI violated the March 1 Order, and that RBI, Stan, and Manager were at fault for the violations and acted in a dilatory manner— were    supported    by    record    evidence    and    are    not

clearly erroneous. Moreover, the court did not abuse its discretion by choosing, as an appropriate sanction, to order RBI to reimburse Summer for the attorney fees and costs she incurred in bringing RBI into compliance with its discovery obligations. We therefore discern no error in the district court's Sanctions Order.

II

¶24     Next, RBI challenges the amount of the award, asserting that $235,286.73 is simply too much money under the circumstances. RBI's argument has some facial appeal; indeed, a fee award this large tends to draw a negative reaction, and at first blush might appear excessive. But the question presented is governed by an abuse of discretion standard and, on the record before us, we are unable to conclude that the district court abused its discretion in imposing this award.

¶25     District courts have wide discretion in the calculation of amounts awarded as attorney fees. *See Dixie State Bank v. Bracken*, 764 P.2d 985, 988 (Utah 1988) ("Calculation of reasonable attorney fees is in the sound discretion of the [district] court, and will not be overturned in the absence of a showing of a clear abuse of discretion." (quotation simplified)). However, "an award of attorney fees must be based on the evidence and supported by findings of fact." *KB Squared LLC v. Memorial Bldg. LLC*, 2019 UT App 61, ¶ 31, 442 P.3d 1168 (quotation simplified). When evaluating the reasonableness of a request for attorney fees, courts are to evaluate several factors, including,

> the difficulty of the litigation, the efficiency of the attorneys in presenting the case, the reasonableness of the number of hours spent on the case, the fee customarily charged in the locality for similar services, the amount involved in the case and the result attained, and the expertise and experience of the attorneys involved.

*Bracken*, 764 P.2d at 989 (quotation simplified). In assessing reasonableness, "what an attorney bills or the number of hours spent on a case is not determinative." *Id.* at 990.

¶26   After the district court awarded attorney fees to Summer in its Sanctions Order, Summer filed an affidavit of attorney fees and costs, requesting a total of $343,590.12 in fees and costs. RBI responded by filing an objection to Summer's request, stating its general view that Summer's fee request was excessive, and stating specific objections on the following grounds: (1) that the award should be limited to time spent on "bringing and prosecuting the discovery motion," rather than on other unrelated matters, and asserting that no fees should be awarded for time spent prior to March 17, 2017; (2) that some of the work performed by Summer's lawyers had been duplicative, and that sometimes they had assigned two lawyers to work on tasks or appear at hearings that could reasonably have been handled by one lawyer; and (3) that some of the time entries were vague, and were not obviously related to the discovery efforts. RBI did not object to the individual billing rates charged by Summer's attorneys. With regard to its first specific objection, RBI asked the district court to reduce the amount of fees by $46,029 for time spent before March 17, 2017, and by another approximately $39,000 for time spent after that date on allegedly unrelated matters; with regard to its vagueness objection, it asked for a reduction of about $12,000; and with regard to its duplication objection, it did not ask for a specific reduction amount, but asked that Summer's fee request be "reduced accordingly" for duplicative efforts. In total, RBI asked the court to reduce Summer's fee request by about $85,000, plus an unspecified amount for duplication.

¶27   At RBI's request, the district court held an evidentiary hearing to consider Summer's fee application and RBI's objections. After taking evidence and considering argument from both sides, the court made an oral ruling at the hearing,

explaining on the record that it was largely persuaded by the arguments in support of RBI's objection. It wholly agreed with RBI on the March 17 issue, ordering Summer's fees reduced by $46,029—exactly the amount requested by RBI—for time spent prior to that date. The court also agreed with RBI that additional requested time had been spent by Summer's attorneys after March 17, 2017, on matters unrelated to the discovery issues, and the court therefore ordered Summer's fees reduced by $39,630, the approximate amount requested by RBI. The court also agreed with RBI that Summer's lawyers had, on occasion, duplicated effort, and ordered Summer's fees reduced by approximately $19,000 for duplication. However, the court rejected RBI's vagueness objection, and refused to reduce Summer's fees on that ground. In sum, the district court largely agreed with RBI's objections and sustained most of them, and as a result ordered Summer's fees reduced by more than $100,000, or approximately 30%.

¶28    In examining this record, we cannot conclude that the court abused its discretion by not reducing the award yet further. The court appeared sympathetic to RBI's concerns about the size of the fee award, and sustained each of its objections except for the one regarding vagueness. Thus, the only complaints RBI can conceivably have about the manner in which the court calculated the amount are (1) that the court overruled the vagueness objection, and (2) that the court did not cut Summer's fees deeply enough for duplication.

¶29    On the first issue, we agree with the district court that the time entries at issue were not unduly vague. Viewed in context, those time entries were clearly related to the discovery issues, and a knowledgeable reader can reasonably ascertain what tasks the time entries are referring to. And on the second issue, RBI did not ask the district court for a specific reduction for duplication; instead, it offered several examples of time entries it considered duplicative, but did not attempt to compile a

comprehensive list and did not ask for reduction by any specific amount. We cannot say that the district court, faced with a non-specific objection, abused its discretion by making its own effort to identify duplicative effort, and concluding that Summer's fee award should be reduced by more than $19,000.

¶30    In short, the record reveals that the district court carefully considered all of the evidence before it, including the voluminous billing entries and the testimony about them, as well as the objections and arguments of counsel, and issued a well-considered ruling regarding the appropriate amount of the fee award. The district court's actions in this regard were a proper exercise of its discretion.

## CONCLUSION

¶31    The district court did not err in determining that RBI engaged in discovery abuses that warranted sanction, and it did not abuse its discretion in selecting an award of attorney fees as an appropriate sanction. Moreover, the court did not abuse its discretion in calculating the amount of attorney fees and costs to be awarded.

¶32    Affirmed.[3]

───────────

3. We acknowledge the Motion to Substitute Appellees that was recently filed by RBI pursuant to rule 38(c) of the Utah Rules of Appellate Procedure. *See* Utah R. App. P. 38(c) (stating that, "[i]f substitution of a party is appropriate" for reasons other than death or incompetency, "the court may substitute the party upon good cause shown"). In our view, that motion is not ready for consideration by this court, because issues remain to be decided in the first instance, at the district court level, regarding the validity of the sale at which RBI purportedly purchased

(continued…)

(…continued)
Summer's rights in this appeal, and regarding the relative priority of the various claimants (including, apparently, Summer's law firm pursuant to a purported attorneys' lien) who assert an interest in funds deposited with the district court. As a reviewing court, we are simply not in a position to decide these issues, some of which may be fact-bound, in the first instance. Once those issues have been conclusively determined at the district court level, we may have a role in reviewing those determinations in the event one or more parties elect to timely appeal from those determinations. The district court, following issuance of this opinion, may consider whether to stay enforcement of the judgment at issue in this case pending determination of the issues surrounding substitution.